[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. The Dissolution of the Marriage
It is found that all of the allegations of plaintiff's complaint have been proven and that the marriage of the parties has broken down irretrievably. Their marriage is ordered dissolved for that reason.
II. The Marital Estate of the Parties Plaintiff
 1/2 interest in family home at 358 Camp Street, Plainville, CT
 F. M. V. $120,000 Less 1st mtg. $20,197 Less 2nd mtg. $10,905 ------- TOTAL — 31,102 TOTAL EQUITY $88,898
1/2 interest $44,449
 Household furniture, etc. — Peoples Bank 53 Webster Bank J/T T = $11,500 1\2 interest 5,750 Metropolitan C.U. J/T T = $300 1/2 interest 150 Franklin Conn. Tax Free Inc. J/T T = 1000 1/2 int. 500 Life Ins. F.V. $20,000 C.S.V. 601 CT Page 9202 Retirement Trust R C ($75, 119-$29,527 loan) 45,592 1989 Volkswagon 2,000 1986 Honda Accord 1,200 21 Savings Bonds J/T T = $1,650 1\2 interest 825 ________ $101,120
 Defendant
 1/2 interest in equity in family home $44,449 1990 Chevrolet Cavalier her 1,400 Golf Clubs, personal property — **Life insurance A.A.L. Life F.V. $50,000 C.S.V. 4,000 **Life insurance A.A.L. Life F.V. $15,000 C.S.V. 150 Life insurance Globe Life F.V. $25,000 — —
 Bank Accounts
 Webster Bank (s) P.O.D. Brendan 925 Webster Bank (s) 8,800 Webster Bank (s) S/J/T T = $11,500 1/2 5,750 Webster Bank (s) 2,300 Webster Bank (s) J/D's father T = $5,200 1/2 2,600 Webster Bank (s) J/D's mother T = $9,300 1/2 4,650 Metropolitan C.U. J/T T = $300 1/2 150 Webster Bank C/A 900 I.R.A. (2) 4,000 ________ $30,075
 Savings Bonds
 3 bonds J/D's mother T $712 1/2 356 5 bonds J/D's sister T $20 1/4 1,007 9 bonds J/D's son T = 3568 1,795 9 bonds D.P.O.D. son 928 13 J/D's son T = $878 439 21 bonds J/T T = $1,650 825 53 bonds J/son T = $17,166 8,583 1 bond D.P.O.D. son 100 ------- TOTAL $14,033
$14,033 CT Page 9203
4 bonds sold by D. in violation of court order $411
Pension
Stop Shop $40,478
Securities
 Dean Witter $5,800 Franklin Temp. Fund 1/2 500 ------ $6,300 $6,300
 *Advest Inc. Zero Coupon Bonds Valued at $21,008 are in a custodial account for son Brendan and are not considered part of the distributable marital estate.
 **Because of the orders entered in Article Other Orders these policies are not included in the marital estate. $137,146
TOTAL MARITAL ESTATE $239,266
III An Examination of the Evidence as it Relates to Sec. 46b-81c C.G.S. General Background Information
The plaintiff wife and the defendant husband were married in New Britain, Connecticut on May 18, 1973, twenty five years ago. They have one child, a son Brendan, who was born May 12, 1980, became eighteen during the course of the trial and graduated from Plainville High School this June. Both of the parties are presently forty six years of age.
Prior to her marriage plaintiff had graduated from high school and had also in 1972 received an AA degree from Greater Hartford Community College which she had attended for two years. Following the completion of her schooling she was employed as a paralegal at the law firm of Gilman and Marks for seven years, and after a short stay at Day, Berry and Howard has been engaged as a legal assistant at Robinson and Cole since 1981. Her most recent financial affidavit reflects a gross weekly income of $759 CT Page 9204 with a weekly net after the usual deductions of $550. From all appearances plaintiff is in reasonably good health. In 1980 she suffered for a period of time from depression and made weekly visits to a psychologist for counseling but has no later medical history.
Defendant's educational background includes his graduation from high school and his attendance at Central Connecticut State College for two or three years without obtaining a degree. Since 1973 he has been employed in the produce department of a Stop 
Shop Supermarket where he works the night shift. His current financial affidavit indicates a gross weekly income of $1,132 with a weekly net after the customary deductions (excepting stock and bond purchases and loan repayments) of $763. Defendant also appears to be in reasonably good health. He plays golf frequently and enjoys other outdoor activity.
The parties spent most of their married years together in a home in Plainville, Connecticut which they purchased in 1978.
Gifts and Inheritances
a. Plaintiff
Plaintiff's mother died in 1993 and the following years plaintiff received $15,000 from her estate as an inheritance. Plaintiff testified that this money was used to pay household bills, for family purposes including expenses for son Brendan, and for weekend trips for the family.
b. Defendant
Defendant's parents gave the parties $1,000 toward their purchase of the family home, gave them a washer and dryer when they moved in, and on at least one occasion gave the parties their old automobile when they purchased a new one. They have also been most generous to their only grandchild, Brendan, over the years.
Of particular concern to the court is the manner in which to treat various savings bonds purchased by defendants parents, particularly his mother, during the course of the marriage, and placed in the names of the parties and their son Brendan in one form or another. These gifts began in November, 1977 and with some interruption have continued on an irregular basis until CT Page 9205 fairly recently. Some bonds are in the names of both plaintiff and defendant, others in the name of defendant and Brendan, while still others stand in the joint names of defendant and either his mother or sister. To add to the confusion, defendant during this extended period has also purchased savings bonds by means of pay deductions at his place of employment. These were for the most part placed in the name of defendant and his son.
There is some evidence that certain of these bonds were kept by defendant's mother and never delivered to the named owners, and that still other bonds were returned to defendant's mother by him following the commencement of the present dissolution action. There is also evidence that defendant liquidated a number of these bonds, at least four of them subsequent to a court order prohibiting the dissipation of family assets.
Defendant suggests as a solution to the various problems presented by these bonds that all of them be expended by him for the college education of Brendan. Unfortunately, to follow such a suggestion would only make matters worse. The authority of the trial court to assign a portion of the marital estate to a third party is limited to real property. It is "without authority to transfer marital property to the children of the marriage." Wolfv. Wolf, 39 Conn. App. 162, 171 (1995).
Plaintiff in turn proposes that all bonds in which defendant has an interest be included in the marital estate and that the parties in effect have an equal share in all of them.
The court declines to exclude from the marital estate savings bonds purchased by defendant's mother and standing in his name. "The fact that the defendant, subsequent to his marriage to the plaintiff received substantial property from his parents in his name only does not operate to exclude this property from the marital assets." Watson v. Watson, 221 Conn. 698, 711 (1992).
Having reviewed and weighed all of the evidence on the subject of the savings bonds, all the while being mindful that while defendant's contribution to their acquisition exceeds by far that of plaintiff, plaintiff's unquestioning offering of her mother's inheritance of not too dissimilar a value must also not be overlooked at this moment, this court concludes that in balancing fairly the equities, it should treat all savings bonds wherein defendant has an interest as part of the distributable marital estate. CT Page 9206
Fault
An examination of the evidence relating to this factor discloses the opinion of each of the parties concerning the causes for the irretrievable breakdown of their marriage.
Plaintiff
Plaintiff testified that the marriage started to deteriorate during their first year together because defendant continued living a single lifestyle, keeping late hours and using both alcohol and drugs excessively. On two occasions he was charged with drunken driving and spent weekends in jail. He gambled excessively and spent much of his spare time and family funds at the Connecticut casinos. On one occasion he angrily punched a hole in the bedroom wall and threw chairs, tires and garbage cans around the garage. Shortly before defendant left the family home in September, 1996 plaintiff learned that he had begun a relationship with another woman.
Defendant
Early in the marriage plaintiff had a five year affair with a fellow employee which resulted in the separation of the parties for eight months. Defendant's gambling addiction was shared to a lesser degree by plaintiff. In plaintiff's words "all during the marriage my husband and I lived higher than our means. Whenever creditors pressed us we borrowed, charged things." In summary, defendant had very little to offer on this issue.
Conclusion
Following a review of the court's motion on this factor, it concludes that fault for the breakdown of the marriage rests for the most part with defendant.
Other Factors
The vocational skills and employability of the parties are about equal, as are the opportunities of each of them for the future acquisition of capital assets and income.
Defendant has with the generous assistance of his parents contributed more to the marital estate than has plaintiff, but CT Page 9207 this contribution has to no small degree been offset by his gambling habits. These have adversely affected the preservation or appreciation in value of their estate.
The liabilities of defendant exceed those of plaintiff.
Conclusion
The court has reviewed and weighed all of the evidence as it pertains to Sec. 46b-81c C.G.S. and has given special consideration to such predominant factors as the length of the marriage, fault, and the relative liabilities of the parties. It concludes that the marital estate of the parties should be divided equally between them.
IV. The Distribution of the Marital Estate
Total Marital Estate $239,266
Plaintiff's share 50% 119,133
Defendant's share 50% 119,133
Plaintiff Shall Take and Have:
 Entire interest in family home at No. 358 Camp Street, Plainville, CT
Total Equity $88,898
 Household furniture, etc. Life insurance F.V. $20,000 C.S.V. 601 Retirement Trust R C balance 45,592 1989 Volkswagon 2,000 1986 Honda Accord 1,200 ----- Sub Total $138,291 Less debit for payment of defendant's share of son's expenses — 1,170 $137,121 Less amount due Defendant — 17,988 -------- $119,133
CT Page 9208
Defendant Shall Take and Have
 1990 Chevrolet Cavalier $1,400 Golfclubs, other personal property — 3 life insurance policies C.S.V. $1,450 — All bank accounts 30,075 All savings bonds 14,858 All plaintiff's bank accounts securities 6,453 Stop Shop pension 40,478 Securities 6,300 4 bonds sold in violation of court order 411 Credit for 1/2 expenses incurred by son Brendan for car and health care in accordance with court order of October 2, 1996. 1,170 ----- Subtotal $101,145
Plus amount due defendant from plaintiff 17,988 -------- Total $119,133
V. Supplemental Orders Relating to the Distribution As Used in Article
A. Defendant is ordered to convey to plaintiff all of his interest in the family home situated at No. 358 Camp Street, Plainville, Connecticut. Plaintiff in turn will hold defendant harmless concerning all mortgages and other incumbrances on said property.
B. Plaintiff is ordered to give defendant her promissory note in the amount of $17,988 which shall be secured by a mortgage on said family home. Said note shall bear interest at the rate of 4 percent per annum and shall be due and payable upon the earliest to occur of the following events:
1. The remarriage of the plaintiff;
2. The death of the plaintiff;
3. The sale of said premises;
4. The failure of the plaintiff to occupy said premises as her primary residence; CT Page 9209
5. Five years from date hereof.
C. The parties shall execute all documents necessary to carry out these and any other orders of the court.
VI. Liabilities
A. The credit card debts of the parties are allocated as follows:
 ApproxAccount Account No. Balance P. D.
1) AT T 1,263.49 1,263.49 2) Bank of NY/UFCW/#5432354001869989 7,469.60 3,734.80 3,734.80 Household Credit 3) Fleet VISA #5413809091463079 4,557.17 2,278.58 2,278.59 4) First USA VISA #5417122445219825 5,184.96 2,592.48 2,592.48 5) Chase #5260210081681636 5,344.45 2,672.23 2,672.22 6) Citibank VISA #4128003211927580 3,394.31 1,697.16 1,697.15 7) People's #4116070008778314 3,234.63 1,617.31 1,617.32 8) American Express #373494307831002 3,024.13 3,024.13 9) Citibank VISA #4128003220061223 7,094.10 7,094.10 10) Metropolitan CU a) VISA #462685006009614 8,765.17 8,765.17 b) Loan #43256311-0 6,471.24 6,471.24 11) Citibank VISA #412800322006 7,094.10 7,094.10
TOTAL $62,897.35 $15,856.05 $47,041.30
Defendant's obligation to pay his share of the credit card debt listed in this paragraph shall be considered a duty directly related to the support and maintenance of plaintiff and shall be nondischargeable by defendant in bankruptcy.
B. The parties shall be jointly responsible for real estate taxes due the Town of Plainville in the approximate amount of $2,800.
C. With the exception of the above allocations, each of the parties shall be solely liable for all liabilities listed on his or her financial affidavit and shall hold the other party harmless in that regard. CT Page 9210
VII. Alimony
The Court has considered all the provisions of Sec. 46b-82
C.G.S. as they apply to the evidence. In particular it has noted the length of the marriage, twenty five years, the variation in the present incomes of the parties and their vocational skills and employability.
On the evidence it is ordered that defendant pay to plaintiff as alimony the sum of $150 per week.
Said order is modifiable only as to amount but shall sooner terminate upon the remarriage of the plaintiff, the death of either party, or plaintiff's co-habitation with an unrelated male within the meaning and intent of Sec. 46b-86 (b) C.G.S.
The parties shall annually, commencing April 15, 1999 and continuing while said order is in effect, exchange federal income tax returns.
Article Other Orders
A. Life Insurance
Defendant shall continue to maintain his three existing life insurance policies in the total face value of $90,000 with plaintiff as irrevocable beneficiary during such time as defendant shall be required to pay alimony to the plaintiff.
B. Health Insurance
Defendant shall permit plaintiff to have COBRA coverage on his existing policy for the maximum period prescribed by law at plaintiff's sole cost and expense.
C. Attorney's Fees
In view of the previous orders of the court, no award of attorney's fees is made to either party.
D. Other Obligations of Defendant
1. Defendant shall pay plaintiff $1,169.88 representing of car and health care expenses incurred by son Brendan and in accordance with the order of the court on October 2, 1996. CT Page 9211
Said sum shall be deducted from the amount plaintiff owes defendant in accordance with the provisions of Article IV (supra).
2. Plaintiff's claims for $7,227.86 representing mortgage and other house upkeep costs are disallowed, she having sole occupancy of the family home during that period in which said costs were incurred.
3. Plaintiff is ordered to transfer to defendant his Sentry safe, the big screen t.v. and the yellow portable t.v.
4. If not previously delivered, defendant shall pay plaintiff $275 representing alimony and support for one week.
By the Court
John D. Brennan Judge Trial Referee