[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
AMENDED MEMORANDUM OF DECISION[1]
The plaintiff wife, 46, whose birth name is Perron, and the defendant husband, 47, married on July 1, 1972 in New Canaan, Connecticut. The court's jurisdiction is based on the plaintiff's continuous residence in this state for over one year prior to the commencement of this action for dissolution. They have three children, two having attained majority and the youngest, Wesley, born August 21, 1981. Both parties enjoy good health.
The plaintiff received an undergraduate degree in 1971. She was employed until the birth of their first child in July, 1976. The plaintiff resumed part-time employment teaching theatre for the past ten years. She is also now serving as an assistant teacher in a Darien elementary school. To be re-certified as a teacher in Connecticut will require 12 to 15 credits, estimated by the plaintiff to require one year to complete, at $200 to $300 per credit hour.
The defendant is an attorney who has commuted to New York City for the past 20 years. He began as an associate with Bower 
Gardner on August 1, 1977 and on January 1, 1983 became a partner. In June, 1994, the firm voted to dissolve, and bankruptcy proceedings occurred. The defendant had no income from June until October 1, 1994, when he joined his present firm, but he is not a shareholder in the P.C. He receives a monthly gross salary of $13,333, and, after mandatory deductions, a monthly net of $10,858.33. He received a $35,000 bonus in 1995 and a $32,500 bonus in 1996. The 1997 bonus is unknown.
As a result of the collapse of his former firm he has an obligation of $75,000 as his share of its debts. He also has credit card debts totaling about $20,000.
The marital home known as 148 West Norwalk Road, Norwalk is CT Page 9984 valued at $425,000 by each of the parties, subject to a first mortgage of $336,000 and a second mortgage of $89,000. In the summer of 1994 the defendant transferred his interest to the plaintiff via quit-claim deed. The defendant moved from the home in May, 1995.
The plaintiff lists bank accounts of $7,450, retirement funds of $145,465, life insurance, cash surrender value of $82,610, the total net death benefit being listed as $451,385. Plaintiff's Exhibits #2 through #7 are policy statements dated December, 1996 totaling $451,384 total death benefits, listing the direct beneficiary as Debra York on four policies and Deborah P. York as such on two policies. In addition, personal property, furniture and furnishings are assigned a value of $11,900.
The plaintiff lists a 1992 Ford Explorer valued at $12,000, bank accounts of $4,000, the same life insurance as the defendant listed, an IRA of $2,754 and tangible personal property of $12,000, and her interest as half. The plaintiff lists liabilities totaling $46,884, most of which being legal fees.
The plaintiff attributes the breakdown of the marriage to the defendant's infidelity which was occurring contemporaneously with his firm's breakdown. He acknowledges his behavior and attributes his affaire de coeur to the plaintiff's "insensitivity" to his career crisis causing him to feel abandoned by her. The court concludes that both parties contributed to the marriage breakdown.
During the pendency of this suit the defendant gave the plaintiff $60,000 in 1996 to maintain their family in the family home. The plaintiff drew $5000 on a credit card which she used for legal fees. The defendant has since paid this in full.
No pendente lite alimony or child support orders have been entered in this case. The defendant seeks to have the $60,000 paid to the plaintiff ordered as periodic alimony. The court declines the invitation. It appears to request a retroactive order and the court, in filing this decision rendering judgment extinguishes the purpose for pendente lite orders. Trella v.Trella, 24 Conn. App. 219, 222 (1991); Wolf v, Wolf,39 Conn. App. 162, 167 (1995).
The parties have divided much of their tangible personal property to their mutual satisfaction. Each prepared a list CT Page 9985 (plaintiffs Exhibit #11 and defendant's Exhibit A). The plaintiff testified she wanted nothing returned from among the items the defendant removed and now possesses. The court will not redivide any tangible personal property.
The evidence and the inferences drawn by the court indicate that the life insurance loans, bonus and the withdrawals from deferred compensation by the defendant in 1996 and 1997 were used primarily to meet tuition expenses (cf. plaintiff's Exhibits #9 and #10).
Having reviewed the evidence in light of the applicable statutes, in particular § 46b-81 and § 46b-82 as well as relevant case law, the court enters the following decree.
1. Judgment is entered dissolving the marriage on the ground of irretrievable breakdown.
2. The parties shall have joint legal custody of the minor child, with physical custody with the plaintiff and reasonable visitation given to the defendant.
3. The defendant shall pay to the plaintiff, as unallocated periodic alimony and child support the sum of $5,000 monthly to and including, June, 2000, at which time the monthly payment shall be reduced to $4,000 to and including June 30, 2005 at which time the monthly payment shall be reduced to $3,000. Alimony shall terminate upon the death of either party, plaintiffs remarriage, or further court order.[2] The amounts ordered and their duration are both modifiable. A contingent wage withholding order is entered.
4. The real estate shall be placed on the market for sale by the plaintiff no later than August 1, 2000, or sooner at her election or upon any transfer of interest prior to said date. The plaintiff shall maintain the property until sold, except the parties shall share any repair exceeding $300, and provided the defendant may obtain a second estimate. The plaintiff is prohibited from further encumbering the property. Either party may apply for further orders to effect the sale (cf. Roberts v.Roberts, 32 Conn. App. 465). The net proceeds shall be divided equally between the parties.
5. The defendant's retirement funds as they exist on the day judgment is entered are ordered divided via a QDRO transferring CT Page 9986 50% to the plaintiff, including 50% of any accretion in value occurring between the judgment and the subsequent actual division. The defendant's attorney and defendant shall be responsible for preparation of the QDRO.
6. The defendant shall assign ownership of Northwestern Mutual Life policies #8230381 and #9096130 to the plaintiff. He shall continue to pay the premiums thereon for so long as he is obligated to pay periodic alimony. Their net death benefit total $161,962.43 (plaintiff's Exhibits #3 and #5.)
7. The defendant shall continue to maintain the medical insurance for the minor child at his sole expense. The parties shall divide any unreimbursed bill balances or deductibles. The provisions of § 46b-84 (d) shall be incorporated in the judgment.
8. The parties shall retain the items of tangible personal property as they now possess as their respective sole property.
9. The plaintiff shall retain her bank accounts, the 1992 Ford Explorer and her deferred compensation account.
10. The defendant shall pay the sum of $20,000 to the plaintiff as an allowance to prosecute and not as additional periodic alimony, 50% due and payable on January 31, 1998 and 50% due and payable on January 31, 1999.
11. The parties shall each be solely responsible for their respective debts.
12. Counsel for the plaintiff shall prepare the judgment file.
So Ordered.
HARRIGAN, J.