[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married in Fort Lauderdale, Florida on November 9, 1984. They have one child, Monica Laura Mathiesen, born September 7, 1984. The parties have been separated since February 1998. The daughter lived for awhile in New Canaan, Connecticut, however, she has more recently been living with her father. The mother indicated that she sees CT Page 15465 the child from time to time, and for the most part the visits are in Florida. The parties entered into a Stipulation with regard to custody dated May 18, 2001, however, they did amend that stipulation as filed and left for the court decision issues regarding the cost of the mother's exercise of visitation. The testimony of the wife indicated that the airfare was approximately $150-200 round trip when it was booked at least two weeks in advance.
The wife is approximately 48 years old. Her health is generally good with the exception of a chronic back problem which she indicates stems from the period following the birth of her daughter. She has no formal education beyond high school, and in fact has earned a GED. She was born in Hungary and came to this country as a teenager following a year's sojourn in Italy. She acknowledges that she continues to have problems with reading and writing. There is no question that she has a limited earning capacity. She has worked at a succession of jobs mostly in the retail area from J. C. Penny's, to the gift shop on a cruise line and a travel agency. She attributes part of her lack of work experience to the frequent moves along her husband's career path. During the course of the marriage the parties moved frequently including Florida, Virginia, San Francisco, California, Hawaii and Greece. She is currently working at Seasons Too in Norwalk selling patio furniture. She earns approximately $468 per week gross. Her rate of pay is $13 per hour, and she does not have health insurance.
The husband is approximately 50 years old and has worked for a number of years in the cruise line industry. He has worked for a variety of lines including Royal Caribbean and Cunard. He has held positions from president of operations to chief steward to hotel manager. Some of the financial problems for the family began when the defendant left Cunard to help found Premier Cruise Lines. He was president as well as being a shareholder and a member of the board of directors. He was fired from that position and the company later filed for bankruptcy protection. There followed a substantial period of unemployment and/or underemployment. He is currently a self-employed consultant under what he describes as an "open-ended" contract paying him $7500 per month gross. He resides in Florida in a condominium which he owns subject to a mortgage. His health is apparently good.
At one point during the marriage the parties owned a home in Weston, Florida described as a five bedroom home on a lake. The initial purchase price was approximately $450,000. The 20% down payment came in part from a modest inheritance from the husband's family as well as mutual savings. The house was sold in 1998, and at their separation, each party divided evenly the $60,000 net proceeds, together with one half of the remaining family savings. In total each party walked away with approximately CT Page 15466 $70,000 in cash. The husband later purchased his condominium in Florida. The husband also has a one quarter interest in a boat. The wife testified that she had used her share for living expenses in Connecticut during the period when the husband provided little or no support. At the time of separation, the husband promised to pay to the wife the sum of $6,000 per month. He did so for six to eight months and then stopped. He has not made any payments to her for over a year. Under the terms of a Stipulation by and between the parties dated November 2, 2000 (#110), which became an order of the Court, the husband agreed to pay to the wife the existing arrearage in the amount of $11,250.00 on or before December 1, 2000, and at the same time to pay to the wife the sum of $2,500.00 per month. Likewise, he has failed to make these payments to her as of the date of this order. He testified that his former employer, from whom he expected a payment of funds, had unbeknownst to him declared bankruptcy. He made a timely motion for modification, which issue was preserved at the time of trial. Also preserved for trial is the plaintiff's Motion for Contempt dated January 11, 2001 (#115), which she has asked the court to rule on as part of its ultimate decision.
Each party has incurred debts since the filing. The major dispute between the parties in this regard involves the husband's filing of a joint federal income tax return for the year 1998 without his wife's signature. This has created a question as to who is responsible for the approximately $38,000 liability for taxes, interest, and penalties. The evidence indicates that the liability arose chiefly from a large payment the husband received during that year. The wife did not file a 1998 income tax return, testifying that "she did not know she had to." In addition, the husband indicated that he has borrowed monies from his current girlfriend's father which does not appear on his financial affidavit, but which needs to repaid. Finally, there is a claim by Mark Henderson, attorney for the minor child for attorney's fees amounting to approximately $5,800.
The remaining estate of the parties is relatively modest. The husband has a Cunard pension which he indicated is now in the form of an annuity worth $21,000. More significantly, he testified that 100% of that pension was accrued during the marriage of the parties. He testified that he had an IRA or a 401(K) Plan (he was not sure which) with Premier Cruise Lines, but that it was cashed in prior to the filing of the present action. The husband has a claim against Cruise Holdings, Ltd. which after arbitration resulted in a $200,000 judgment together with interest. He indicated his legal bills are over $125,000 to date. Cruise Holdings has filed for bankruptcy protection. He owns some stock in Premier Cruise Lines, however, the certificates were never issued, and since the corporation folded there is a question as to whether or not there is any worth to them. CT Page 15467
The wife testified that the parties had separated by agreement in February of 1998. The husband was more explicit with regard to the causes of the breakdown of the marriage which he described as a "difficult relationship." The husband testified as to having no peace at home or emotional support with regard to the difficulties he was encountering at work. Communication regarding the minor child has been less than ideal. The court concludes that each bears some responsibility for the breakdown of the marriage.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-56, 46b-81, 46b-82, 46b-84, and 46b-215a of the Connecticut General Statutes, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That it has jurisdiction.
 2. That the allegations of the complaint are proven and true.
 3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown.
 4. That the wife has a limited earning capacity due in part to her lack of a formal education and limited work history mainly, retail sales at minimum or slightly above minimum wage; and that she is unlikely to be in a position to acquire significant assets, in particular retirement assets, in the future.
 5. That the husband has a demonstrated earning capacity of $90,000 to $100,000 per annum.
 6. That the presumptive basic child support is $274.00 per week; and that the wife's share is $70.00; and that it is appropriate and equitable to apply the deviation criteria set forth in Section 46b-215a-3 of the Child Support and Arrearage Guidelines Regulations, in that: the wife will incur significant visitation expenses [Section 46b-215a-3 (b)(3)(A)] and other equitable CT Page 15468 factors [Section 46b-215a-3 (b)(6)(C)].
 7. That throughout the marriage, until their separation, both parties made significant contributions to the acquisition, maintenance, and preservation of the family assets.
 8. That by a Stipulation by and between the parties dated November 2, 2000 (#110), which became an order of the Court, the husband agreed to pay to the wife the existing arrearage in the amount of $11,250.00 on or before December 1, 2000 and to pay to the wife the sum of $2,500.00 per month, again commencing December 1, 2000; that the husband has made no payments in accordance therewith, and that as of the date of this order he would be in arrears in the amount of $41,250 ($11,250 + $2,500 x 12 = $41,250); that the husband's failure to pay was due to circumstances outside his control, in particular the filing of bankruptcy by his former employer, and that therefore he is not in willful contempt; that the husband filed a Motion for Modification of Alimony-Pendente Lite (#117) dated January 29, 2001; that taking the foregoing circumstances into account, as well as the husband's earning capacity, and the fact that he made no payments to the wife during the period following the Stipulation, it is equitable and appropriate that said temporary order be modified to $1,000 per month retroactive to March 1, 2001; and that therefore, the current arrearage is hereby found to be $27,750 ($11,250 + $2,500 x 3 + $1,000 x 9 = $27,750).
 9. That on or about February 1998 the parties divided the proceeds from the former marital home in Weston, Florida, as well as their joint savings, each receiving approximately $70,000; that during the pendency of this action, the husband used a portion of same to purchase a condominium unit at 231 N.W. 36th Avenue, Deerfield Beach, Florida; that it is the primary residence of the husband and the minor child; that the present fair market value is $80,000; that there is a mortgage on same with a balance of $48,000; and the present equity CT Page 15469 therein is $32,000.
 10. That the husband filed a joint federal income tax return for the year 1998 without the signature of the wife; that the parties had been living separate and apart since February 1998; that no credible evidence was offered regarding an agreement by and between the parties to file a joint income tax return for 1998 [Kane v. Parry,
Conn. App. 307, 315 (1991)]; that the Internal Revenue Service has assessed both parties for a tax liability in the amount of $38,376.30 as of April 16, 2001; that the tax assessed was due primarily to the income and earnings of the husband; and that it is equitable and appropriate that the husband be responsible for the entire debt.
 11. That on May 18, 2001, the parties entered into a Stipulation regarding Custody of and Visitation with the minor child, as on file with this court (#125); and that the court finds the same to be in the best interest of the minor child.
 12. That no credible evidence was introduced demonstrating the existence of any policy or policies insuring the life of the husband; that no credible evidence was introduced by either party as to the ability of the husband to obtain life insurance and/or the cost of premiums for same; and that the Court is without authority to enter any orders regarding same. Michel v. Michel, 31 Conn. App. 338, 341-42 (1993); Wolf v. Wolf, 39 Conn. App. 162, 171 (1995).
 13. That per paragraph 10 of the Stipulation of the parties dated May 18, 2001, the Court has reviewed the Affidavit Re Attorneys Fees dated May 24, 2001, submitted by Mark Henderson as the attorney for the minor child; that the total fees and costs in the amount of $5,831.50 are fair and reasonable; and that each party should be responsible for a portion of same.
 14. That no credible evidence was introduced regarding the existence of any pension or other retirement CT Page 15470 plans in which the husband is vested and/or a participant other than the "Cunard Line Limited Cash Balance Plan"; and that it is equitable and appropriate that the wife share equally therein, including any contributions and appreciation thereto up to and including the date of this Memorandum of Decision or date of division, whichever is later.
 ORDER
IT IS HEREBY ORDERED THAT:
 1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmarried.
 2. The parties shall have joint legal custody of the minor child, MONICA LAURA MATHIESEN, born September 4, 1984. The primary residence of the minor child shall be with the defendant husband, subject to the reasonable, liberal and flexible visitation rights of the plaintiff wife as set forth in the Stipulation of the parties dated May 18, 2001. The husband shall be responsible for the reasonable transportation costs, including airfare, incurred by the wife or the minor child, as the case may be, in connection with the exercise of the wife's visitation with the child for the visitation next following the entry of this order, and every third visit thereafter during the minority of the child. However, the husband shall not be liable for the cost of more than six (6) visits in any one calendar year. The wife shall be responsible for her own meals and lodging. The parties shall consult with one another concerning all major issues involving the minor child, including but not limited to, health, education, and religious affiliation and training. In the event that parties are unable to agree upon any issue regarding custody and/or appropriate visitation, they shall first bring the matter to the Family Relations Office for mediation prior to a determination by the Court. The Court hereby reserves jurisdiction with regard to any issue or controversy which may arise in CT Page 15471 this regard.
 3. Commencing December 1, 2001, the plaintiff shall pay to the defendant the sum of $1.00 per year as and for basic child support for the minor child. In the event that the child is still in high school upon reaching her eighteenth birthday, then in that event, any child support order shall continue until the child reaches the age of nineteen years or the first day of the first month following her graduation from high school, whichever shall sooner occur pursuant to Section 46b-84 (b) C.G.S.
 4. Commencing December 1, 2001, and monthly thereafter, the defendant shall pay to the plaintiff the sum of $1,000.00 as and for periodic alimony, until the death of either party, the remarriage of the plaintiff, or November 30, 2011, whichever shall sooner occur. In addition thereto, commencing December 1, 2001, and monthly thereafter, the husband shall pay to the wife the sum $300.00, until such time as the arrearage is paid in full.
 As to the real estate at 231 N.W. 36th
Avenue, Deerfield Beach, Florida, except as set forth herein, the husband shall retain title thereto free and clear of any claims by the wife and shall have exclusive possession of the real estate, subject to the existing indebtedness, and he shall be responsible for the payment of all mortgages, liens, taxes, and insurance. The husband shall pay to the wife the sum of SIXTEEN THOUSAND AND NO/100 DOLLARS ($16,000.00) upon the sale or other transfer of title to the property (or any portion of it), a refinance of the existing mortgage or the obtaining of new or additional financing, or one (1) year from the date of this Memorandum of Decision, whichever shall sooner occur. The husband shall, within thirty (30) days hereof, execute a simple Promissory Note to the wife containing the usual language regarding the payment of reasonable attorneys fees and costs in the event of his default, and which shall not bear interest if paid CT Page 15472 on or before the end of such one year period, but which will carry simple interest at the rate of eight (8%) percent per annum thereafter until paid in full. Said Promissory Note shall be secured by a mortgage deed. In making this portion of the order, the Court has inter alia considered the parties' division of assets at the time of their separation and the wife's limitations regarding the accumulation of assets in the future.
5. Personal property shall be divided as follows:
 A. Each party shall be entitled to keep the personal property and home furnishings at their respective residences free and clear of any claims by the other.
 B. Each party shall be entitled to keep the automobile which they are currently driving (whether owned or leased) free and clear of any claims by the other, and subject to any leasehold or lien which shall remain their sole responsibility, and for which they will indemnify and hold the other harmless from any further liability thereon. Each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
 C. The husband shall be entitled to retain his interest in the motor boat free and clear of any claims by the wife.
 D. Each party shall be entitled to retain the balances in their respective checking and savings accounts free and clear of any claims by the other.
 E. The wife shall be entitled to retain her jewelry free and clear of any claims by the husband.
 F. Each party shall share equally in the net proceeds from any recovery from the legal action against Cruise Holdings, Ltd., after the payment of reasonable attorneys fees and CT Page 15473 costs.
 G. To the extent that it has any value, the parties shall divide equally the shares of Premier Cruise Lines, and if the stock certificates have been issued, the husband within thirty (30) days from the date of this order transfer the wife's share to her. The Court hereby reserves jurisdiction with regard to the disposition of this asset.
 6. The husband shall maintain and pay for health insurance for the minor child during her minority. Un-reimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor child shall be divided by the parties, 75% by the husband and 25% by the wife. The provisions of Section 46b-84 (e) shall apply.
 7. Effective as of the date of this order, the then balance of the Cunard Line Cash Balance Plan
("Plan") of the husband through his former employer, together with any interest and/or additions accrued thereon as of the actual date of distribution, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by attorney for the husband, 50% to the husband and 50% to the wife. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to review the QDRO prior to filing with the court, including, but not limited to prior and current balances and prior account activity. No withdrawals, distributions, or transfers shall be made regarding the Plan except as consistent with this order. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
 8. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon. The foregoing CT Page 15474 notwithstanding, the husband shall have the sole responsibility for any taxes, interest, and penalties arising out of any joint federal or state income tax returns for the year 1998, and he shall indemnify and hold the wife harmless for any liability thereon.
 9. The husband shall be entitled to claim the personal exemption for the minor child commencing with the tax year 2001 and thereafter.
 10. Each party shall be responsible for their respective attorneys fees and costs incurred in connection with this action. In addition, each party shall be responsible for the attorneys fees and costs of the attorney for the minor child as follows: $1,500.00 by the wife and $4,331.50 by the husband. Each party shall pay 25% of their respective obligations within thirty (30) days from the date of this order and shall make satisfactory arrangements with Attorney Henderson for payment of the balance in full within twelve (12) months thereafter.
 11. The Court hereby orders an Immediate Wage Withholding Order pursuant to Section 52-362 C.G.S in order to secure the payment of the alimony and arrearage orders.
THE COURT
SHAY, J.