[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. PROCEDURAL HISTORY
This matter first came to court by summons and complaint dated July 24, 2001, and returnable August 21, 2001, in which complaint the plaintiff wife sought a dissolution of marriage, joint legal custody of the minor children with principal residence with the plaintiff, child support, alimony, an equitable division of the parties real and personal property, the restoration of her maiden name and such other relief to which she may be entitled. Accompanying the complaint was a notice of automatic court orders.
On August 17, 2001, the defendant husband appeared through counsel and filed a cross complaint seeking a dissolution of marriage, joint legal custody of the minor children with physical custody to the defendant, child support, an equitable distribution of real and personal assets and other appropriate equitable relief.
During the pendency of this action each of the parties filed several pendente lite motions which resulted in a stipulated order on September 10, 2001 which provided for, inter alia, joint legal custody of the two CT Page 5100 minor children who would reside primarily with the defendant, exclusive possession of the marital home to the defendant, parenting time for the plaintiff and provided further that the plaintiff pay to the defendant $150 per week per the child support guidelines. Both parties appeared for a limited contested trial which was held on April 18, 2002 during which each of the parties gave testimony. Having heard said testimony and after consideration of all the evidence submitted at trial and after reviewing the orders proposed by each of the parties in light of the evidence, the court makes the following findings.
II. FINDINGS OF FACT
 (A) BASIC FACTS
The plaintiff whose maiden name was Carolyn Shaw, and the defendant intermarried on September 4, 1994 in St. Paul, Minnesota. The plaintiff has resided continuously in this state for more than one year prior to the initiation of these proceedings. The marriage of the parties has broken down irretrievably with no reasonable prospect for reconciliation. The plaintiff and defendant have two minor children who are issue of the marriage: Alexander David Mona born September 14, 1996, and Spencer Michael Mona, born August 26, 1998. No other minor children have been born to the plaintiff since the date of marriage. Neither party nor the minor children have been recipients of aid from the state of Connecticut. The court has jurisdiction over the parties and the marriage.
At trial, each of the parties presented proposed orders to the court some of which were agreed and stipulated to by the parties. The court heard testimony on the issues upon which the parties could not reach agreement.
The plaintiff wife is 34 years old and presented no health issues. She has been employed for the past twelve years by American Airlines as a reservation clerk and is presently employed part time having reduced her hours since the birth of the youngest child in 1998. She currently works twenty-eight hours per week earning a gross weekly income of $559.00 and a net weekly income of $447.00. Full time employment is most difficult to obtain in the airline industry since the September 11, 2001 attacks. As to specific personal assets of the plaintiff, the court finds the following values:
 2001 Volvo Automobile ($30,000 less loan balance of $24,000) $6,000.00 People's Bank Account $25.00
Plaintiff did not disclose in her financial affidavit dated April 18, CT Page 5101 2002 the existence of shares of American Airlines and Sabre stock accumulated since August, 2001 when she sold, contrary to the automatic orders, previously accumulated shares of said companies for $3,500. Plaintiff used the majority of the proceeds ($2,500.00) to pay her credit card debt and the balance ($1,000.00) was applied to her Attorney's fees. Plaintiff also failed to disclose on her financial affidavit the existence and value of her pension plan with American Airlines which has been vested for five years.
In August, 2001, plaintiff voluntarily removed herself from the jointly owned martial single family dwelling located at 21 Partridge Lane in Barkhamsted, Connecticut and has resided in several dwellings since then. She currently pays $400 per month for the rental of one room in a private dwelling. She asserts that the market value of the martial dwelling is $180,000.00 with a mortgage balance of $79,000.00 resulting in an equitable value of $101,000.00 of which she claims fifty percent.
The defendant husband is 39 years old and presented no health issues. He also works for American Airlines by whom he has been employed for six years. He is a fleet service clerk whose job consists of turning the aircraft, unloading and cleaning the aircraft. He also is employed part-time and works from 9:00 p.m. to 3:30 a.m. during the weekdays. His gross weekly earnings are $399.00 and his net weekly earnings are $328.00. The defendant served in the Army Reserve for eight years and through schooling and technical training, currently holds a Class II electrician's license. Until June, 2001 defendant held a second part time job working for an electrical contractor on a daily basis from 10:00 a.m. to 3:00 p.m. Defendant was compelled to terminate his employment with the electrical contractor in June, 2001 as plaintiff became increasingly unavailable to care for the minor children due to the pending dissolution and due to her frequent trips to Minnesota to visit a terminally ill friend. Defendant's parents were unable to provide the extended child care services which were necessitated by defendant's double employment.
Since plaintiff vacated the marital home, defendant has been compelled to assume the primary care-taking responsibility for the parties' two children.
As to defendant's specific personal assets, the court finds the following values:
 1993 Ford Explorer Automobile ($7,100.00 less loan balance of $4,000.00) . . . . . . . . . . . . . . . . . . . . . . . . . . $3,100.00
Defendant did not disclose the value of the household furnishings, his CT Page 5102 checking account balance, or his pension from American Airlines, although he did disclose the existence of said pension.
Defendant, as stated, has resided with the children in the jointly owned marital dwelling since the plaintiff vacated said premises in August. The monthly mortgage payment, which apparently includes real estate taxes and insurance premiums is $837.00. Shortly, defendant will commence to receive $300.00 per month from a boarder who will be renting one room in the dwelling which defendant will apply to the mortgage payment.
Defendant asserts that the market value of the marital dwelling is $170,000.00 with a mortgage balance of $86,000 resulting in an equitable value of $84,000 of which he claims fifty percent. In order to provide appropriate care for the children while defendant is working, he has arranged for a nanny who is nineteen and who has been employed as a child care assistant to stay with the children. Defendant anticipates a weekly compensation to the nanny of at least $100 in addition to room and board.
B. DISCUSSION
The marriage of the parties, with the exception of some ups and downs, was mutually successful and productive until May, 2001 when plaintiff announced that she no longer wished to be married to the defendant. The parties had two children and were residing in a comfortable dwelling, built only five years prior to their separation. They planned to build equity in the dwelling so that they could, in the future, use the equity, to purchase a dwelling in Minnesota, where property values are somewhat lower.
Whether the court accepts plaintiff's evaluation of the dwelling or that of the defendant, the dwelling is of substantial equitable value. The house was built by defendant as a general contractor who did the roofs, siding, sheetrock, windows and the electrical work while plaintiff assisted in the painting and staining. The parties required and obtained a construction mortgage of only $74,000 to complete the dwelling. Defendant estimates that the value of his work alone amounted to $50,000, testimony which the court find to be credible. Although the plaintiff claims that the defendant was verbally, physically and sexually abusive to her there were no complaints filed by plaintiff with authorities until after plaintiff vacated the marital home, complaints that were prompted by defendant's requests for financial assistance from plaintiff to meet the household obligations and by plaintiff's demands to defendant to sell the home and give her fifty percent of the net sales price. There were two incidents of alleged physical violence resulting in CT Page 5103 the arrest of the defendant. Plaintiff, however, was also arrested for the second incident which resulted in a protective order which, inter alia, prohibited her from entering the marital dwelling. Both defendant and the two children are currently engaged in counseling recommended by the family relations office in connection with said arrests. Defendant denies any assaultive behavior toward plaintiff and admits that he employed physical restraint to thwart assaultive and out-of-control behavior by plaintiff in front of the children. Since August, 2001 plaintiff's visitation with the children has been sporadic as she has failed to follow any kind of regular visitation schedule, although the pendente lite order provided for joint child care responsibilities. Since August, 2001, plaintiff has had the children with her for four weekends only. Recently, the children had no word from their mother for a period of nine days. Plaintiff has failed to provide defendant with her address; in case of an emergency involving the children, \ defendant has no means of contacting their mother. Plaintiff has been consistently late in discharging her pendente lite child support obligation although the payments on her 2001 Volvo are up to date.
Defendant's double part time employment may have been a contributing factor to the marital difficulties, however, this court finds that it was plaintiff's announced desire to terminate the relationship and to pursue a single life in Minnesota with the use of funds derived from her equitable interest in the home that destroyed this marriage. Since she ended the relationship plaintiff's attitude and conduct towards her husband, her two children and this dissolution proceeding has been molded by her fixation on the attainment of her personal goals. Her suggestion to this Court that the court order the immediate sale of the marital house and, thereby, dispossess her two young children of their present stable, secure and comfortable environment is untenable. Her suggestion that, in the alternative, this court suspend any child support payments during the years that she rents her equitable interest in the dwelling to her husband and children is unthinkable.
III. LAW
In reaching its decision as to the issues in dispute the court has considered each of the factors provided in General Statutes § 46b-81
and 46b-82. The court has also reviewed the Child Support And Arrearage Guidelines, effective August 1, 1999 and the provisions contained in General Statutes § 46-84 regarding the obligation of parents to maintain their children according to their respective abilities and to provide health insurance coverage for their children.
IV. DISSOLUTION
CT Page 5104
The marriage of the parties having broken down irretrievably with no hope of reconciliation, therefore a decree may enter dissolving the marriage.
V. ORDERS
 CUSTODY AND VISITATION
The parties shall have joint legal custody of their children, Alexander and Spencer. The children's primary residence will remain with their father. While plaintiff resides in the state of Connecticut, she will have reasonable, liberal and flexible rights of parenting time with children, including, but not limited to each weekend and one evening during the week. Weekend parenting time shall commence on Friday between 4:00 p.m. and 8:00 p.m. (depending upon plaintiff's work schedule) and shall end Sunday at 7:00 p.m. after plaintiff provides the children with their evening meal. Weekday parenting time shall be on Wednesdays from 4:00 p.m. to 8:00 p.m., terminating after plaintiff provides the evening meal to the children.
In the event that plaintiff takes up residence in the state of Minnesota, plaintiff's parenting time with the children shall consist of an extended summer visit in addition to one school vacation. The summer visit shall commence one week after the school year ends and shall terminate two weeks prior to the commencement of the next school year. The children shall also spend the week of the February vacation with the plaintiff. The plaintiff and defendant shall cooperate to arrange for transportation of the children to their mother's residence. At present such transportation will be provided by American Airlines at no cost, however, should that benefit become no longer available to plaintiff, the parties shall equally divide the cost of transportation. While the children are spending their summer and their winter vacations with their mother plaintiff shall be the primary caretaker of her children. Plaintiff shall also permit the children to telephone the defendant at least once a week while the children are with her. Each of the parties shall provide the other, at all times, with a current address and daytime and evening telephone numbers.
CHILD SUPPORT
At the trial the parties stipulated that the respective gross and net earnings and the ensuing calculation of the child support obligation as contained in the guideline worksheet dated April 18, 2002 prepared by defendant's attorney were correct. The recommended current support order is, therefore $154.00 per week. The court has considered the addition of a weekly sum of $70.00 to defendant's gross income to account for the CT Page 5105 boarder's contribution. The resultant effect on the recommended support order is minimal and well within the fifteen percent guideline limits. Plaintiff, while she resides in Connecticut, will spend each weekend parenting the children which is somewhat in excess of the normal visitation schedule referred to in the preamble to the Guidelines and which, therefore, justifies a slight deviation from the presumptive support amount, a deviation, however, well within the fifteen percent limits. The court will order the plaintiff to pay to the defendant the sum of $145.00 per week as unallocated child support for her two minor children, effective upon the date of filing of this memorandum. Said support order shall be secured by an immediate wage withholding order. Plaintiff is ordered to execute the advisement of rights form. Plaintiff is ordered to pay the weekly child support directly to the defendant until said sum is withheld from her earnings.
The plaintiff will incur a substantial increase in her expenses and the defendant will experience a substantial decrease in his expenses while the children are spending the seven week summer vacation with their mother. Defendant will continue, however, to incur much of the household expense necessary to provide the children with their primary residence. Nevertheless, some deviation from the presumptive support amount is equitable and appropriate during the summer visit. Thus, the court will order during the summer visit only, a weekly reduction of unallocated child support of $70.00 to $75.00 per week unallocated for the two children. See 46b-215a-3 (a) (6) (A) of the Guidelines.
CHILD CARE CONTRIBUTION
As per the guidelines, in addition to the child support ordered herein plaintiff shall pay directly to the defendant on a weekly basis, 38% of the cost incurred by the defendant in providing a caretaker for the children necessitated by his employment.
TAX EXEMPTIONS
The plaintiff shall be entitled to claim Alexander and the defendant shall be entitled to claim Spencer as exemptions for state and federal income tax purposes.
CHILDREN'S HEALTH INSURANCE
The defendant shall maintain medical insurance for the benefit of the minor children. The plaintiff shall pay 38% and the defendant shall pay 62% of all unreimbursed health related expenses, after defendant has met the annual $100 expense per child as provided by the Child Support Guidelines. The provisions of General Statutes, § 46b-84 (e) are CT Page 5106 incorporated into this order.
CHILDREN'S LIFE INSURANCE
Defendant has requested that the court order the Plaintiff to obtain insurance on her life in the face amount of $100,000.00 and to name the defendant as irrevocable beneficiary as security for the child support obligation. This court declines to do so as defendant has presented no evidence as to the cost or availability of such insurance. Wolf v. Wolf,39 Conn. App. 162, 171 (1995).
The court will order that each of the parties constitute the children as irrevocable beneficiaries of any life insurance polices available through his or her employment as a benefit of said employment until such time as the youngest child attains the age of nineteen.
ALIMONY
The court orders no periodic alimony to either party.
REAL PROPERTY
The plaintiff shall immediately transfer all of her right, title and interest in the residence located at 21 Partridge Lane, Barkhamsted, Connecticut to the defendant and the defendant shall be responsible for the payment of the mortgage, taxes, insurance and other expenses associated with said residence. In seven (7) years from the date of the dissolution of the marriage, the defendant shall have the option of either paying the plaintiff one-half of the equity in the property at that time and retaining the residence or selling the residence and paying the plaintiff one-half of the net proceeds received after the payment of the mortgage, real estate commission, conveyance taxes and other customary costs of closing.
Whether the defendant exercises the option of retaining the residence or selling it, he shall be reimbursed 100% of every dollar paid in the reduction of the principal amount of the mortgage from the date of the dissolution of the marriage before the determination of the net proceeds to be divided is calculated.
The defendant shall retain the option of paying the plaintiff 50% of the equity in the property at any time within the seven (7) year period and retaining the residence. Should the defendant choose to retain the property and pay the plaintiff one-half of the equity, the market value shall be determined by each party obtaining an appraisal from a licensed real estate appraiser. CT Page 5107
Having done so, should the parties then continue in disagreement as to said market value, the two appraisers shall select a third appraiser. If the parties are still unable to agree the market value shall be the average of the three appraisals. The balance of the mortgage at that time shall be deducted from the market value of said real property to determine the equitable value thereof, one-half of which shall be paid by the defendant to the plaintiff less the aforementioned reduction in principal. The parties shall equally divide the fee of the third appraiser.
PERSONAL PROPERTY
As to household items, plaintiff shall be entitled to receive the dresser in the basement, fifteen wine glasses, the television and VCR, the queen bed in the guest room, the stainless steel flatware (a gift from plaintiff's mother) and the white living room couch. Defendant shall retain all other household items. Each party may keep and retain all other personal property listed in his or her financial affidavit dated April 18, 2002, including automobiles and bank accounts. The defendant shall retain his pension of unknown value and the plaintiff shall retain her undisclosed pension with American Airlines and her undisclosed securities.
LIABILITIES
Each party shall be responsible for the payment of the liabilities listed in his or her financial affidavit and each shall save the other harmless from any claims made by creditors of the other arising out of said liabilities.
ATTORNEY'S FEES
The court enters no orders as to attorney's fees and leaves the parties to make their own arrangements with counsel.
RESTORATION OF MAIDEN NAME
The court restores to plaintiff her maiden name of Carolyn Shaw.
The parties are declared to be single and unmarried pursuant to the provisions of the statute. The marital union is resolved.
Trombley, J. CT Page 5108