ERIC R. WOLF *v.* LINDA D. WOLF
(13231)

Dupont, C. J., and Lavery and Hennessy, Js.

---

Argued March 14—decision released September 5, 1995

*Sheila S. Horvitz,* for the appellant (defendant).

*Lorraine D. Eckert,* for the appellee (plaintiff).

*Susan M. Connolly,* for the minor children.

HENNESSY, J. The defendant appeals from various orders of the trial court distributing marital property in connection with a judgment of dissolution. The defendant claims that the trial court improperly: (1) distributed marital property between the parties by (a) failing to award her any share of the plaintiff's medical practice, pension or profit sharing plan, (b) giving the plaintiff unbridled discretion in selling the marital residence, and (c) ordering the plaintiff to be compensated for payments on the mortgage of the marital residence

during the pendente lite period; (2) failed to award her alimony for a sufficient period of time; (3) ordered the parties to use marital property to establish a trust fund for the education of the minor children; (4) ordered her to obtain and maintain life insurance policies in the amount of $600,000; (5) delegated postjudgment authority to the attorney for the minor children; and (6) failed to award her attorney's fees.

## I

The defendant's first set of claims involves the distribution of marital property. The defendant first contends that the trial court abused its discretion in failing to award her any share of the plaintiff's medical practice, pension or profit sharing plan. She argues that the trial court abused its discretion by failing to take into consideration her contributions as a homemaker and as the primary caretaker of the minor children. The defendant also contends that the trial court abused its discretion in giving the plaintiff sole authority to determine the price at which the marital residence would be sold, and in crediting the plaintiff for pendente lite mortgage payments on the marital residence. She argues that these orders are inequitable and could influence her overall financial award.

A trial court is accorded wide discretion in determining the proper allocation of the assets of the parties in a dissolution proceeding. *Rummel* v. *Rummel*, 33 Conn. App. 214, 220, 635 A.2d 295 (1993); *Siracusa* v. *Siracusa*, 30 Conn. App. 560, 567–68, 621 A.2d 309 (1993). This discretion, however, must be exercised in conformity with General Statutes § 46b-81 (c),[1] which requires the

---

[1] General Statutes § 46b-81 (c) provides: "In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability,

trial court to consider several enumerated factors, including nonmonetary contributions of the parties, in making assignments of marital property. *Siracusa* v. *Siracusa*, supra, 567; *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 311, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). While the trial court is required to consider all the enumerated statutory factors, it "need not give each factor equal weight . . . or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor." (Citation omitted; internal quotation marks omitted.) *Siracusa* v. *Siracusa*, supra, 567. As long as our review of the record reveals that the trial court considered all the statutory factors, we will not reverse the orders of the trial court unless there has been an abuse of discretion, or unless the findings of the trial court have no reasonable basis in the facts. Id., 566. In addition, it is the appellant's duty to demonstrate that the trial court failed to exercise its discretion in accordance with the law. Id.

We conclude that the trial court considered all of the required factors in making orders concerning the distribution of marital property in this case. In its memorandum of decision, the trial court expressly found that the plaintiff's medical practice "was created, developed and operated solely by the plaintiff," and that "[a]ll assets of the parties with the exception of certain pension and retirement plans in the defendant's name, were obtained through the practice of his profession." The trial court also considered the defendant's work history, the presence of domestic help in the home, and other evidence of how the defendant elected to spend her time. We conclude that the trial court did consider the

estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

nonmonetary contributions of the defendant, as well as the other factors enumerated in § 46b-81 (c).

The order to allow the plaintiff to retain his practice, pension and profit sharing plan should be viewed in the context of its place among all the orders distributing the assets of the marriage. In the context of the entire property distribution scheme, we find no abuse of discretion in the trial court's decision not to award the defendant any part of the plaintiff's medical practice, pension and profit sharing plans.

Likewise, we conclude that the statutory factors were considered and the trial court did not abuse its discretion in its orders relating to the division of the parties' real property. In distributing the real property and the assets therefrom, the trial court awarded the defendant the residential property where she resided with the parties' children. The defendant was also awarded one half of the proceeds of the sale of both the marital residence and a condominium in Clinton. The plaintiff was awarded the other half of the proceeds from the marital residence and the condominium, in addition to the office condominium in which his practice was located.

The defendant does not challenge any of these orders, but claims that the trial court improperly gave the plaintiff sole authority to determine the sale price of the marital residence. An order giving one party the authority to sell marital property can be fair and reasonable. Such an order avoids possible conflict between the parties, which could result in one of the parties thwarting the orders of the court. Thus, it is not error per se that the trial court ordered that the plaintiff would have sole authority in the sale of the house. The defendant has not convinced us that the trial court abused its discretion in entering this order. See *Siracusa* v. *Siracusa*, supra, 30 Conn. App. 560.

The defendant also challenges the trial court's order that, before the proceeds from the sale of the marital residence were divided, the plaintiff would be credited for the reduction in the balance of the mortgage during the pendente lite period. In November, 1992, in response to the defendant's motion for custody, support and alimony pendente lite, the trial court ordered the plaintiff to make the mortgage payments on the marital residence where the defendant continued to reside. In the dissolution decree, the trial court ordered that after the marital property was sold, the plaintiff should be credited with the amount he paid on the mortgage balance pursuant to the pendente lite order. Because the order constitutes a retroactive modification of a pendente lite support order, it is impermissible. *Trella* v. *Trella*, 24 Conn. App. 219, 221–23, 587 A.2d 162, cert. denied, 219 Conn. 902, 593 A.2d 132 (1991); *Weinstein* v. *Weinstein*, 18 Conn. App. 622, 640–41, 561 A.2d 443 (1989). Accordingly, this order must be reversed.

## II

The defendant next claims that the trial court abused its discretion when it failed to award her alimony for a period of time sufficient to allow her to become fully self-supporting. We do not agree.

At the time of the dissolution decree, the trial court found that the plaintiff, a dermatologist in private practice, had the ability to earn $344,318 per year.[2] The trial court found that the defendant at that time was netting $454 per week as a resident in psychiatry and that the residency was scheduled to end in 1994. The trial court projected that upon completing her residency, the defendant would be able to earn approximately $140,000 per year as a full-time psychiatrist. The trial court also found that if she instead chose to utilize her

---

[2] This amount reflects an ability to earn $314,318 per year plus $30,000 toward his pension.

training in radiology the defendant could earn approximately $422,005 per year. The trial court ordered the plaintiff to pay alimony in the amount of $1200 per week for the first year, $1100 per week for the second year, and $750 per week for the third year, after which time the alimony payments would cease.

As in the distribution of marital assets, the trial court is afforded broad discretion in making awards of alimony. *Askinazi* v. *Askinazi*, 34 Conn. App. 328, 330–31, 641 A.2d 413 (1994). Although this discretion must be exercised after consideration of the factors enumerated in General Statutes § 46b-82,[3] we will "indulge every reasonable presumption in favor of the correctness of the trial court's action . . . ." Id., 331.

It is clear from the memorandum of decision that the trial court considered all the appropriate statutory factors in making the award of alimony. The defendant contends, nonetheless, that it will take her longer than the three years during which alimony was awarded to complete her residency and to establish a psychiatric practice capable of supporting herself and the children, and that she should not be expected to secure full-time employment or develop a full-time practice until her youngest child becomes a teenager.

---

[3] General Statutes § 46b-82 provides: "At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

The trial court noted in its decision that it was basing the alimony award on the defendant's earning capacity, and not necessarily on her stated desires regarding employment. This is a permissible rationale for an alimony award. *Vandal* v. *Vandal*, 31 Conn. App. 561, 566, 626 A.2d 784 (1993). Although the defendant testified that she wanted to work only part-time in order to devote time to her children, the trial court did not find her testimony credible, noting that the defendant's schedule at the time of the judgment involved leaving her house at 8 a.m. and returning at 6 p.m. The children were cared for by a housekeeper or a babysitter while the defendant was working. Thus, the alimony award fashioned by the court provided an opportunity for the defendant, by allowing her to complete her residency and to develop a practice, to realize a standard of living similar to that achieved during the parties' marriage. The trial court did not abuse its discretion in making this award. See *Wolfburg* v. *Wolfburg*, 27 Conn. App. 396, 400, 606 A.2d 48 (1992).

## III

We next turn to the defendant's claim that the trial court lacked authority to order the parties to utilize marital property to establish a trust fund for the education of the minor children. This claim concerns the following order of the trial court at the time of the judgment of dissolution: "Stock currently in the marital estate designated as the Raymond James Account in the aggregate amount of $123,000 shall be designated as the children's property in trust for educational expenses. . . . The stock shall be transferred at the time of the divorce as a gift to the trust to be administered by a trustee mutually acceptable to the parties. Each child's trust shall terminate one month prior to the child's eighteenth (18th) birthday and the monies distributed to the child. This trust is hereby set up by judicial decree." The defendant argues that through this order the trial court impermissibly assigned marital

property to individuals other than the parties to the marriage. We agree.

Section 46b-81 (a)[4] empowers the trial court in a dissolution action to assign any part of the marital estate to either of the parties and explicitly authorizes the trial court to pass title to *real property* to either party or to a third person. There is no such authorization concerning the disposition of other forms of marital property.

We construe statutes in accordance with their plain, unambiguous language. *Rhodes* v. *Hartford*, 201 Conn. 89, 93, 513 A.2d 124 (1986). We find no ambiguity in the language of § 46b-81 (a). Accordingly, we interpret the statute to mean that marital property other than real property can be assigned only to the parties to the marriage. Therefore, an award of marital property to the children of the marriage is beyond the authority of the trial court.

The plaintiff and the counsel for the minor children urge us to find that in this case, the trust fund is not an award of property to the minor children but a form of child support, pursuant to General Statutes § 46b-84,[5] to ensure that the education of the children will be

[4] General Statutes § 46b-81 (a) provides: "At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the superior court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect."

[5] General Statutes § 46b-84 provides in relevant part: "(a) Upon or subsequent to the annulment or dissolution of any marriage or the entry of a decree of legal separation or divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance. . . .

"(c) In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills

paid for by the parties. The plaintiff and counsel for the minor children suggest that this case is controlled by *Louney* v. *Louney*, 13 Conn. App. 270, 535 A.2d 1318 (1988), in which this court upheld the order of the trial court establishing a trust fund for the benefit of the minor children of the marriage. We are not persuaded.

In *Louney*, the trial court ordered that the wife act as trustee and utilize funds from revocable joint accounts held by the parties' children with their mother for the education of the children. The court concluded that "this portion of the court's order can reasonably be understood as providing for the support and maintenance of the children . . . ." Id., 274–75. The present case cannot be analogized to *Louney*. The trial court here did not order the parties to use the Raymond James account for the support of the children. The trial court expressly ordered that the funds in the trust account "shall be designated as the children's property."

The trial court was without authority to transfer marital property to the children of the marriage. Therefore, we conclude that the court acted outside the scope of its authority in ordering that the Raymond James account be designated as the property of the children.

## IV

We next consider the defendant's claims that the trial court improperly ordered that she maintain life insurance policies in the combined amount of $600,000 with the parties' three children named as equal beneficiaries. At the time of the dissolution, the defendant had a life insurance policy in the amount of $100,000. The defendant argues that because the trial court did not hear any evidence on her ability to obtain and pay for policies in the amount of $600,000, there was no basis

and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child. . . ."

on which the trial court could reasonably make such an order. We agree.

This claim is controlled by our decision in *Michel* v. *Michel*, 31 Conn. App. 338, 624 A.2d 914 (1993). In *Michel*, we explained that when the trial court orders a party to maintain life insurance as part of a dissolution action "without any evidence whatsoever of the cost or the availability of such life insurance," such action constitutes an abuse of discretion. Id., 341. The most obvious problem with ordering a party to obtain and maintain life insurance without such evidence is that the "the trial court [may have] entered an order with which the [defendant] may not be able to comply." Id.

The plaintiff argues that the decision in *Michel* should not control because in that case, the party ordered to obtain and maintain a life insurance policy had no policy at the time of the dissolution, and in the present case, the defendant had a policy, albeit in a lesser amount. We find this argument unavailing. Because the trial court ordered the defendant to obtain and maintain three $200,000 policies on her life, naming each of the minor children as equal beneficiaries thereon, when she had only one $100,000 policy, the logic of *Michel* directly applies to this case. Not only may it be impossible for the defendant to afford the increased coverage, but it is also possible that "[w]ithout knowing the cost of such insurance, the trial court [may have] entered other financial orders that may be inappropriate, that is, too high or too low depending on the funds required to obtain such insurance." Id.

Without evidence as to the availability and cost to the defendant of acquiring $600,000 worth of life insurance, the trial court did not have a reasonable basis for ordering that the defendant obtain such policies.

## V

The defendant next claims that the trial court acted outside the scope of its authority by designating postjudgment authority concerning the education of the parties' daughter to the attorney for the children. We disagree.

While the defendant is correct in noting that the trial court cannot vest the attorney for the children with any postjudgment decision-making authority; *Weinstein* v. *Weinstein*, 18 Conn. App. 622, 628–29, 561 A.2d 443 (1989); the defendant is incorrect in arguing that that is what occurred in this case. The trial court ordered that in the event of a disagreement between the parties concerning whether their daughter would attend boarding school, the attorney for the children would talk to their daughter and prepare a report for the trial court regarding the daughter's preference.[6] This order is within the scope of General Statutes § 46b-54 (c), which provides that counsel for a minor child "shall be heard on all matters pertaining to the interests of any child, including the . . . education . . . of the child, so long as the court deems such representation to be in the best interests of the child."

This case can be distinguished from *Weinstein* because in that case, the trial court ordered the attorney for the child to mediate disputes between the parties, to approve certain expenses to be shared between the parties, and to select the evening of the week that the plaintiff would be allowed to see the children. Thus, the orders in *Weinstein* "amounted to an improper dele-

---

[6] The trial court ordered that the plaintiff would bear the full cost of any boarding school for the parties' daughter "if she chooses to attend the same. . . . If the parties cannot agree whether or not [their daughter] chooses to go to boarding school, counsel for the children shall discuss the matter with [their daughter] and make a written report to the court. It is the court's order that if she wants to go to boarding school she should be permitted to do so."

gation of [the trial court's] judicial function." Id., 629. In the present case, the trial court merely ordered the attorney for the children to perform duties in accordance with § 46b-54 (c), and did not attempt to delegate the judicial role. The defendant cannot succeed on this claim.

## VI

The defendant's final claim is that the trial court improperly failed to order the plaintiff to pay her attorney's fees. We disagree.

The award of counsel fees in a dissolution action, pursuant to General Statutes § 46b-62, is normally left to the broad discretion of the trial court. *Vandal* v. *Vandal*, supra, 31 Conn. App. 568. In the absence of a clear abuse of that discretion we will allow the order of the trial court to stand. *Cook* v. *Bieluch*, 32 Conn. App. 537, 544, 629 A.2d 1175, cert. denied, 228 Conn. 910, 635 A.2d 1229 (1993). We do not find any evidence that the trial court abused its discretion in declining to order the plaintiff to pay the defendant's counsel and expert witness fees in this case.

## VII

Because we find that three of the trial court's marital property distribution orders were improper, it is necessary to remand the case for reconsideration of all the financial matters. *Michel* v. *Michel*, supra, 31 Conn. App. 341. This is so "[b]ecause the financial orders in an action for dissolution of marriage are of necessity interwoven" and constitute " 'a carefully crafted mosaic.' " Id., quoting *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App. 416, 424, 479 A.2d 826 (1984); see also *Sunbury* v. *Sunbury*, 210 Conn. 170, 175, 553 A.2d 612 (1989). When we disrupt a single tile in this mosaic, we place in doubt the propriety of other financial orders that the trial court may have deemed equitable in relation to the

entire distribution scheme. *Sunbury* v. *Sunbury*, supra, 173–75. Although the trial court may not find it necessary to disturb other financial orders to eliminate the improper modification of the pendente lite mortgage payments, to distribute appropriately the funds from the Raymond James account, or to enter new orders concerning the defendant's life insurance, it must, nevertheless, have the opportunity to exercise its discretion as to all the financial matters in light of our reversal on these three claims.[7]

The judgment of the trial court dissolving the marriage and the child custody and visitation orders are affirmed; the case is remanded for reconsideration of all the financial matters, including property distribution, alimony, child support and attorney's fees.

In this opinion the other judges concurred.

---

[7] We have fully analyzed each of the defendant's claims because they will not necessarily be altered on remand.