## ROBIN MASSA CARROLL *v.* ROBERT MCHENRY CARROLL
## (AC 17317)

Schaller, Sullivan and Kulawiz, Js.[1]

[1] This appeal was argued before a panel comprised of Judges Schaller, Sullivan and Kulawiz. Although Judge Kulawiz agreed with the other two judges regarding the resolution of this appeal, she died before she had the opportunity to concur with the written decision. The parties stipulated, however, that rather than rearguing the appeal to this court with a panel consisting of the original two judges and an additional judge, they would permit the remaining two judges alone to render this written decision.

Argued December 10, 1998—officially released September 21, 1999

*William F. Gallagher*, with whom, on the brief, were *Kurt D. Koehler* and *Gaetano Ferro*, for the appellant (defendant).

*Karen Reynolds*, for the appellee (plaintiff).

*Opinion*

SULLIVAN, J. The defendant in this action for the dissolution of a marriage appeals from the judgment of the trial court. The defendant claims that the trial court improperly (1) ordered him to provide a $100,000 life insurance policy naming the plaintiff as the beneficiary for their minor child, (2) granted the plaintiff sole discretion over whether the child will attend private school and ordered him to contribute to the child's tuition and

(3) ordered him to repay a $90,000 debt to the plaintiff's mother.[2] We affirm the judgment of the trial court.

The following facts are necessary to the resolution of this appeal. When the parties married on July 27, 1985, the plaintiff, Robin Massa Carroll, was a twenty-five year old pharmacist, and the defendant, Robert McHenry Carroll, was a fifty year old ophthalmologist. The parties had one minor child of the marriage. In December, 1988, the parties opened a gun shop called "The Gun Rack," which closed in 1992. The plaintiff's mother had loaned the parties $195,300, which they used to open The Gun Rack. To secure the loan, the defendant executed a note and mortgage in favor of the plaintiff's mother in the amount of $225,000.

In November, 1991, the defendant was indicted for illegal sale of guns. Although the plaintiff was charged as a coconspirator, she never was prosecuted. The defendant, however, pleaded guilty, was fined and was sentenced to twelve months in prison and three years probation.

The defendant commenced his sentence in May, 1993. In late 1992 or early 1993, he made two separate payments of approximately $70,000 and $40,000 to the plaintiff's mother. In addition, the defendant gave the plaintiff's mother approximately fifty "specialty guns" in an attempt to reduce his debt to her.

The trial court, in an oral decision rendered from the bench, dissolved the parties' marriage and issued various orders on May 16, 1997. The court rendered judgment incorporating the terms of the oral decision on May 27, 1997. From this judgment, the defendant now appeals.

[2] The defendant's final claim is that the trial court's improper financial orders require a new trial on all financial issues. In light of our conclusion that the court's orders were proper, we need not address this claim.

## I

The defendant first claims that the trial court improperly ordered him to provide a $100,000 insurance policy naming the plaintiff as the beneficiary for their minor child. Specifically, the defendant claims that the court improperly ordered him to provide life insurance even though there was no evidence of its cost or availability to him. We disagree.

Additional facts are necessary to our resolution of this claim. The defendant, in his financial affidavit and trial testimony, represented to the court that he had two $100,000 life insurance policies, each naming his brother as the beneficiary. The defendant received both policies at no cost because one was provided by the American College of Surgeons and American Academy of Ophthalmology and the other was provided by the American Medical Association (associations). The defendant testified that he originally named the plaintiff as the beneficiary under each policy but at some point designated his brother as beneficiary under each policy.

In its judgment, the trial court ordered the defendant to obtain a $100,000 life insurance policy naming the plaintiff as the beneficiary for his minor child until the child reaches age eighteen. The court did not necessarily require the defendant to purchase a new policy, but rather, ordered the defendant, if he so chose, to "elect to utilize the life insurance shown on [his] financial affidavit to satisfy the obligation."

The defendant claims that the evidence presented at trial was insufficient for the court to determine whether the defendant could either obtain a $100,000 policy or afford such a policy. "Our standard of review in a domestic relations case is well settled. We will not substitute our judgment for that of the trial court and will not disturb an order of the trial court absent an abuse of discretion or findings lacking a reasonable basis in

the facts." *Paddock* v. *Paddock*, 22 Conn. App. 367, 372, 577 A.2d 1087 (1990). An order of life insurance "is very often an appropriate and necessary component of a judgment of dissolution of marriage. Indeed, orders requiring the maintenance of life insurance have been approved on numerous occasions by our courts." *Michel* v. *Michel*, 31 Conn. App. 338, 340, 624 A.2d 914 (1993).

The defendant relies on *Michel* to support his claim that the trial court improperly ordered him to provide life insurance. In *Michel*, the trial court ordered the plaintiff husband to purchase and maintain a life insurance policy of $50,000 " 'with the defendant [wife] as irrevocable beneficiary until such time as the youngest child reaches the age of eighteen.' " Id., 339. At the time of the dissolution, the husband did not have life insurance. Id., 340. Further, neither party presented any evidence of the availability or cost of such insurance, or of the husband's insurability. Id. This court reversed the judgment, concluding that the trial court had entered an order with which the husband might not have been able to comply. Id., 341.

The defendant further relies on *Wolf* v. *Wolf*, 39 Conn. App. 162, 664 A.2d 315 (1995), to support his claim. In *Wolf*, the trial court ordered the defendant to maintain three separate $200,000 life insurance policies, each naming the minor children as beneficiaries. Id., 171. This court, applying *Michel*, reversed the trial court's order because that court had evidence before it that the defendant had only one $100,000 policy, and did not have evidence that the defendant could either obtain or afford the increased coverage. Id., 172. The trial court, therefore, did not have a reasonable basis for ordering the defendant to maintain the increased coverage. Id.

The defendant's reliance on *Michel* and *Wolf* is misplaced. The defendant claims that even though he had

two life insurance policies provided to him at no cost at the time of the dissolution decree, once he failed to be affiliated with the associations, they would terminate his coverage. The defendant further claims that he does not know if he could change the beneficiary on each policy from his brother to the plaintiff. The defendant claims, therefore, that "the mere existence of the two policies, without any evidence whatsoever of the cost or the availability of other life insurance, and in light of the defendant's uncontroverted testimony, did not provide an adequate foundation for the court's order. The court did not have all the information necessary to craft its order regarding life insurance." We disagree.

Unlike the trial court in *Michel*, the trial court here had evidence of the defendant's insurability and financial ability to provide a life insurance policy naming the plaintiff as beneficiary for the child. When the trial court rendered the dissolution decree, it had the defendant's financial affidavit indicating that he had two $100,000 life insurance policies provided to him at no cost, even though the defendant never testified about the cost of the policies. Moreover, the defendant testified that he had, in fact, already changed the beneficiary on the policies from the plaintiff to his brother. Accordingly, we conclude that the trial court did not abuse its discretion in ordering the defendant to provide a $100,000 life insurance policy naming the plaintiff as the beneficiary for the parties' minor child.

II

The defendant's second claim is that the trial court improperly granted the plaintiff sole discretion over whether the parties' child will attend private school and ordered him to contribute to the tuition. We disagree.

The trial court, in its oral decision, ordered that the defendant is "to cooperate as best as possible, that is, act in good faith regarding any private schooling based

on his financial ability and . . . tempered with the fact as to whether or not such private schooling is necessary and/or required. It is not necessarily at the sole discretion—it may be at the sole discretion of . . . [the plaintiff]—that [the child] attend private [school]. But she can't force [the defendant] to pay for half or a portion thereof beyond his ability or if it's not necessary or reasonable that he do attend."

## A

"[C]ourts have the power to direct one or both parents to pay for private schooling, if the circumstances warrant. It is a matter to be determined in the sound discretion of the court on consideration of the totality of the circumstances including the financial ability of the parties, the availability of public schools, the schools attended by the children prior to the divorce and the special needs and general welfare of the children." (Internal quotation marks omitted.) *Hardisty* v. *Hardisty*, 183 Conn. 253, 262, 439 A.2d 307 (1981).

The defendant relies on *Hardisty* to support his claim that the trial court abused its discretion in fashioning its order. In *Hardisty*, the trial court, postjudgment, increased its order of child support from $45 to $150 per week. Id., 261. The trial court's modification included an increase to allow the parties' child to attend a private boarding school. Id. The plaintiff, however, enrolled the child in the school without first consulting the defendant, who believed that private schooling at the secondary level was unnecessary even though he easily could afford to send the child to the school. Id. Our Supreme Court concluded that the trial court abused its discretion by requiring the defendant to pay the child's private school tuition. Id., 265. The court found that the record did not reveal that there was a special educational or psychological need for the child or an inadequacy of the local public schools that would compel private

schooling in a situation where the defendant believed it was not necessary. Id., 264. "The right of the custodial parent to make educational choices is . . . an insufficient basis, absent a showing of special need or some other compelling justification, for increasing the support obligation of the noncustodial parent who genuinely doubts the value of the program that he is being asked to underwrite." Id., 265.

In the present case, the plaintiff testified that she wanted to enroll the child in a private day school because he needed male camaraderie and because he needed to be intellectually challenged more than he would be in a public school. Although the defendant claims on appeal that the plaintiff's reasons for enrolling the child in private school are not compelling, the defendant did not previously object to placing the child in a private school. Nothing in the record indicates that the defendant genuinely doubts the value of the program that he is being asked to underwrite. There is "no evidence as there was in *Hardisty* of a good faith dispute about the educational needs of [the] child." *Flynn* v. *Flynn*, 7 Conn. App. 745, 748, 510 A.2d 1005 (1986). Accordingly, we conclude that the trial court properly ordered the defendant to contribute to his child's private school tuition.

B

The defendant further claims that the trial court abused its discretion because its order granting the plaintiff sole discretion over whether the parties' child attends private school "is inconsistent with the statutory definition of joint custody, to which the parties agreed." We disagree.

General Statutes § 46b-56a (a) provides: "For the purposes of this section, 'joint custody' means an order awarding legal custody of the minor child to both parents, providing for joint decision-making by the parents

and providing that physical custody shall be shared by the parents in such a way as to assure the child of continuing contact with both parents. . . ." "The difference between a sole custodian and a joint legal custodian is that the sole custodian has the ultimate authority to make all decisions regarding a child's welfare, such as education, religious instruction and medical care whereas a joint legal custodian shares the responsibility for those decisions." *Emerick* v. *Emerick*, 5 Conn. App. 649, 657 n.9, 502 A.2d 933 (1985), cert. dismissed, 200 Conn. 804, 510 A.2d 192 (1986); see *Tabackman* v. *Tabackman*, 25 Conn. App. 366, 368–69, 593 A.2d 526 (1991).

In this case, the trial court's judgment does not give the plaintiff ultimate authority to make all decisions regarding the child's welfare. In fact, the only authority regarding the child's welfare that the court provided to the plaintiff in its judgment is that it *"may* be at the sole discretion" of the plaintiff to determine if "private schooling is *necessary and/or required."* (Emphasis added.) Accordingly, we conclude that the trial court did not abuse its discretion.

### III

The defendant's third claim on appeal is that the trial court improperly determined his debt to the plaintiff's mother, who was not a party to the action, when the amount of the debt was disputed. Specifically, the defendant claims that the trial court abused its discretion by fixing the amount of the debt because "the court has left the door open for [the plaintiff's mother], a nonparty, to pursue an action to recover the alleged debt, but may have precluded the defendant . . . from litigating the issue of the amount of the debt and raising legitimate defenses thereto." Essentially, the defendant is claiming that he may be collaterally estopped from

disputing the amount of that debt in a future proceeding. The defendant's claim is without merit.

Additional facts are necessary to our resolution of this claim. The trial court, in its judgment, found "that the liabilities shown on the defendant's affidavit, especially the loans from [the plaintiff's mother] were for his direct benefit or [they] indirectly benefitted the defendant. And therefore the defendant shall pay and be responsible for all debts and liabilities shown on the defendant's financial affidavit, dated May 5, 1997, and hold the plaintiff harmless [therefrom] or from any costs and charges that she may incur or cause to be incurred by reason of his default thereon. The court, as between the parties hereto and the [plaintiff's mother], finds that the debt is ninety thousand dollars. This finding does not diminish any rights, any legal redresses that [the plaintiff's mother] may have [as] to the parties. The finding of ninety thousand dollars is only as between [the defendant] and [the plaintiff] and [her mother] within the strict confines of the dissolution of marriage proceeding."

General Statutes § 46b-81 (a) provides in relevant part that "[a]t the time of entering a decree . . . dissolving a marriage . . . the [trial court] may assign to either the husband or wife all or any part of the estate of the other. . . ." Section 46b-81 authorizes one party to assume the joint liabilities of the parties. See *Beede* v. *Beede*, 186 Conn. 191, 196–97, 440 A.2d 283 (1982). The defendant claims that the trial court abused its discretion "when the court made a judicial determination of the amount of the liability owed to [the mother] when that amount was disputed." We conclude, however, that § 46b-81 authorized the trial court to order the defendant to assume the burden of paying the outstanding debt.

Moreover, the doctrine of collateral estoppel does not apply to this case. Collateral estoppel "precludes a

party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . [T]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding." (Citations omitted; internal quotation marks omitted.) *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 812, 695 A.2d 1010 (1997). Because the mother was not a party to the dissolution proceeding, the doctrine of collateral estoppel cannot be invoked against the defendant.

The judgment is affirmed.

In this opinion SCHALLER, J., concurred.