******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ERNEST J. NEDDER *v.* LAUREN E. NEDDER
## (AC 45654)

Elgo, Cradle and Westbrook, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court dissolving her marriage to the plaintiff and entering certain financial orders. *Held*:

1. The defendant could not prevail on her claim that the trial court did not have the authority to order the plaintiff to use specific assets to pay certain expenses and debt; it was legally and logically correct for the court to equitably divide the parties' property and to order the three financial accounts at issue to be used for their originally intended and historical purposes, as the court derived its authority to enter those orders from the statute (§ 46b-81 (a)) governing the assignment of property and the responsibility for debts when entering an order dissolving a marriage.

2. The defendant could not prevail on her claim that the trial court abused its discretion in failing to assign a value to the plaintiff's quasi-pension account prior to dividing the parties' property: this court presumed that the parties' property interest in the account was considered by the trial court when it made its equitable division of property; moreover, although the court did not state which valuation method it used, it was not required to do so, and, because the defendant failed to file a motion for articulation to clarify any potential ambiguity in how the court valued the parties' property, there was no evidence in the record supporting the defendant's claim.

3. The defendant could not prevail on her claim that the trial court abused its discretion in fashioning its alimony orders:

    a. The defendant's claim that the trial court based its alimony orders on the plaintiff's gross income without considering his net income failed; the plaintiff's net income was easily ascertainable, the court had exhibits in evidence showing the plaintiff's net earnings for each of the four years prior to the dissolution hearing, the court's memorandum of decision mentioned net income when determining the amount of child support, and the court stated that it was adopting the plaintiff's proposal as to the amount of alimony to award, which was calculated as a percentage of the plaintiff's net income averaged over the last four years.

    b. The trial court did not abuse its discretion in the amount of alimony it ordered; the record revealed that the court properly considered the criteria in the statute (§ 46b-82 (a)) for determining what amount of alimony to award, and, as it was within the court's discretion to place various degrees of importance on each criterion according to the factual circumstances of the case, this court could not conclude, on the basis

of the facts, evidence and findings in the record, that the trial court ordered an insufficient alimony award.

Argued November 9, 2023—officially released July 23, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendant filed a cross complaint; thereafter, the matter was tried to the court, *Moukawsher, J.*; judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court. *Affirmed*.

*Tara C. Dugo*, with whom was *Melissa A. Bohl*, for the appellant (defendant).

*Alexander Copp*, with whom was *Rachel Pencu*, for the appellee (plaintiff).

*Opinion*

ELGO, J. In this appeal from a marital dissolution judgment, the defendant, Lauren E. Nedder, claims that the trial court erred in (1) ordering that the plaintiff, Ernest J. Nedder, use specific assets to pay certain expenses and debt, (2) failing to assign a value to a quasi-pension account prior to dividing the parties' property, and (3) fashioning its alimony orders. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The parties were married on June 18, 2005, and have five children together. On November 19, 2020, the plaintiff brought an action for dissolution of marriage, stating that the marriage had broken down irretrievably with no hope for reconciliation, to which the defendant agreed. A trial was held over the course of four days in June, 2022. The court heard testimony from both parties and various other witnesses, including, inter alia, financial experts for both parties. Both

parties filed proposed orders that contained their respective proposals for property division, child support, and alimony.

In his proposed orders, the plaintiff requested, inter alia, that he be awarded three accounts—the "Fidelity HSA #0811" (health savings account), the "Ameriprise brokerage #1133" (brokerage account), and the "RSM US LLP Draw account" (draw account)—with the understanding that they would be used for the limited purpose of funding the children's medical expenses, the children's postmajority educational expenses, and tax payments made in 2022, respectively. At trial, the court questioned the plaintiff about these accounts. Following a colloquy with the plaintiff's counsel, the court indicated that it understood the plaintiff's intention to "distinguish [those accounts] as not being necessarily entirely for his benefit"; at the same time, the court recognized that, to effectuate the proposed use of those accounts, it "still [has] to allocate [them] to him." The defendant at that time did not object or raise any issue with the plaintiff's proposal. The court also heard extensive testimony regarding the plaintiff's quasi-pension account (PVA account) from the plaintiff and from the parties' respective financial experts.

On June 28, 2022, the court rendered a judgment of dissolution ending the parties' seventeen year marriage. The court agreed with the parties' custody and parenting agreement and incorporated it as a court order, such that the parties would share joint legal custody of their five minor children, who then ranged in age from three years old to sixteen years old. The court entered orders dividing the marital estate, which provided, inter alia, that the defendant would retain the marital home and receive a total "property payment" of $75,000 payable in twelve monthly installments. The plaintiff received the parties' vacation property located

in New Jersey. The court divided ownership of the par-ties' bank accounts, and ordered that the plaintiff was to retain the following accounts with specific limita-tions: (1) the health savings account was "to be used solely for the children's medical expenses," (2) the bro-kerage account was "to be used solely for the children's postsecondary educational expenses," and (3) the draw account was "to be used solely for tax payments in 2022." The court ordered that a 401k account belonging to the plaintiff was to be equally divided between the parties, and permitted the plaintiff to retain the IRA and retirement brokerage accounts he had owned prior to the marriage. The court also awarded to the plaintiff an "RSM Capital Account" and the PVA account. The court ordered that the defendant was to receive $5034 in weekly child support, and a monthly alimony pay-ment of $5000. The alimony was to be paid for eight years. This appeal followed. Additional facts will be set forth as necessary.

## I

The defendant first claims that the court erred when it ordered the plaintiff to use specific assets to pay a specific debt or liability.[1] The defendant does not dis-

---

[1] In his brief, the plaintiff argues that this court lacks subject matter jurisdiction to adjudicate this claim due to the defendant's lack of aggrievement. Because aggrievement is a basic requirement of standing, and standing implicates subject matter jurisdiction, we briefly address this threshold issue.

It is axiomatic that "only an aggrieved party may appeal." *Newman* v. *Newman*, 235 Conn. 82, 94, 663 A.2d 980 (1995). "Standing is established by showing that the party claiming it is authorized by statute to bring an action, in other words, statutorily aggrieved, or is classically aggrieved. . . .

"The fundamental test for determining [classical] aggrievement encom-passes a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action] . . . . Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a *possibility*, as distin-guished from a certainty, that some legally protected interest . . . has been adversely affected." (Emphasis added; footnote omitted; internal quotation

pute that the court had the authority to award the health savings account, the brokerage account, or the draw account to the plaintiff, nor that it had the authority to require him to pay for the children's medical expenses, postsecondary educational expenses, or to make tax payments. Rather, the defendant asserts that the court did not have the authority to order the plaintiff to use these specific accounts to pay for the named liabilities and committed reversible error in doing so.[2] We disagree.

marks omitted.) *Handsome, Inc.* v. *Planning & Zoning Commission*, 317 Conn. 515, 525–26, 119 A.3d 541 (2015).

The defendant meets the first prong of classical aggrievement because she has a specific, personal, and legal interest in the equitable division of the marital property. The three accounts at issue in the defendant's first claim constitute marital property. The second prong of classical aggrievement is a relatively low threshold, as the defendant need only show a *possibility* of being adversely affected by the court awarding these three accounts to the plaintiff and directing that they be used for prescribed, limited purposes.

The defendant claims her legal interest in these accounts is adversely affected because any "additional funds" that might remain in the accounts upon satisfying the stated obligations or liabilities "cannot be utilized by either party pursuant to the court's limiting order. This harms both parties, as it leaves assets undivided." The defendant may still claim an interest in any funds remaining in these accounts even though they were awarded to the plaintiff. This is because, upon a careful review of the record, it is evident that a possibility exists that the court did not take the funds into account when equitably dividing the parties' assets. On the first day of the trial, the plaintiff's counsel agreed that the funds in those three accounts "shouldn't be considered part of the total balance between the parties in terms of money," "because it's our claim that they'll be set aside for" the specific proposed purposes. The court acknowledged that the plaintiff was asking the court "to think about these [accounts] differently," and advised counsel to "save it for closing argument or some other time, but . . . don't forget [to say that] if you're just adding up who gets what number, you shouldn't be treating this as equal weight to that." Although the record is devoid of any indication of whether the court removed the value of these accounts in the equitable division of assets, the possibility that any potential remainder would be undivided between the parties is sufficient to meet the minimal threshold requirement of standing. See *Handsome, Inc.* v. *Planning & Zoning Commission*, supra, 317 Conn. 525 (" '[s]tanding requires no more than a colorable claim of injury' ").

[2] In the concluding paragraphs of the defendant's discussion of her first claim in her principal appellate brief, she raises two ancillary arguments—

When a party "challenges the legal authority of the court to issue [an] order, [the] claim raises a question of law that is subject to . . . plenary review." *Rosato* v. *Rosato*, 77 Conn. App. 9, 17, 822 A.2d 974 (2003). "[T]he court's authority to transfer property appurtenant to a dissolution proceeding requires an interpretation of the relevant statutes. Statutory construction, in turn, presents a question of law over which our review is plenary." *Smith* v. *Smith*, 249 Conn. 265, 272, 752 A.2d 1023 (1999).

The parties agree that the court derives its authority to order that the plaintiff retain the disputed accounts from General Statutes § 46b-81 (a), which provides in relevant part: "At the time of entering a decree annulling or dissolving a marriage . . . the Superior Court may

that "the practical effect of such orders makes them unworkable" and that "the trial court's orders leave assets undivided and liabilities unpaid." For several reasons, we decline to review these ancillary contentions. First, those contentions are inadequately briefed because they are "without substantive discussion or citation of authorities . . . ." (Internal quotation marks omitted.) *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022). The defendant also did not provide any analysis indicating how these contentions related to the issue raised on appeal, which is whether the court lacked the authority to enter the orders in question. Finally, although a potential remainder in the three accounts constituted the possibility of an undivided interest sufficient to establish standing; see footnote 1 of this opinion; it was incumbent upon the defendant to file a motion for articulation in accordance with Practice Book § 66-5 to clarify whether the court did, in fact, value the accounts in its equitable division of the parties' property. "It is a well established principle of appellate procedure that the appellant has the duty of providing this court with a record adequate to afford review. . . . Where the factual or legal basis of the trial court's ruling is unclear, the appellant should seek articulation pursuant to Practice Book § [66-5]. . . . Accordingly, [w]hen the decision of the trial court does not make the factual predicates of its findings clear, we will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.) *Blum* v. *Blum*, 109 Conn. App. 316, 331, 951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008). Here, in the absence of any evidence to the contrary and because the defendant failed to file a motion for articulation to clarify the court's order, we assume the court intended that the plaintiff keep any funds remaining in these accounts after the named liabilities have been satisfied.

assign to either spouse all or any part of the estate of the other spouse. . . .” The defendant concedes that § 46b-81 authorizes the court to order that a party be responsible for the payment of debts and liabilities. See *Carroll* v. *Carroll*, 55 Conn. App. 18, 27, 737 A.2d 963 (1999) (“[§] 46b-81 authorizes one party to assume the joint liabilities of the parties”).

The defendant nonetheless relies on *Zilkha* v. *Zilkha*, 159 Conn. App. 167, 123 A.3d 439 (2015), to support her argument that the court acted “well beyond [its] statutory authority” when “requiring the [plaintiff] to utilize specific assets to pay said debts, liabilities and expenses . . . .” The plaintiff counters by arguing that *Zilkha* is inapposite to the present case. We agree with the plaintiff.

In her brief, the defendant posits that, in *Zilkha*, this court held that “the trial court lacks the authority to order that fees be paid from a specific asset, regardless if said asset is owned solely by the party that is directed to make the payments.” However, the defendant fails to consider that the reason “the court lacked authority to distribute the escrow funds [was] because the judgment of dissolution had not been opened.” *Zilkha* v. *Zilkha*, supra, 159 Conn. App. 172.

In *Zilkha*, the trial court had rendered a judgment of dissolution after dividing the property of the parties in accordance with § 46b-81 (a). Id., 169. Three years later, the plaintiff filed a motion to open and set aside the dissolution judgment after the defendant received a vast sum of money from a claim that allegedly was fraudulently undisclosed during the pendency of the dissolution action. Id. The court granted a motion to order part of the defendant’s money from the claim to be “held in escrow pending the outcome of the plaintiff’s postjudgment motion to open,” but because the plaintiff

took no action to conduct discovery or gather information regarding the alleged fraud, no decision was made regarding the postjudgment motion to open, and the motion remained pending. Id., 170–71. Years later, when a postjudgment motion for fees and retainers was filed to compel payment, the trial court ordered that the funds still held in escrow be used to pay for some of those fees. Id., 171–72. On appeal, this court held that "the court could not make orders for funds to be distributed from the escrow account because those funds belonged solely to the defendant, *until and unless*, *the court opened the judgment and distributed the escrow funds*, if at all. Accordingly, the court was without authority to disburse funds from the escrow account." (Emphasis added; footnote omitted.) Id., 175.

It is axiomatic that "[c]ourts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute." (Internal quotation marks omitted.) *Smith* v. *Smith*, supra, 249 Conn. 272. Once a dissolution of marriage has been rendered, the judgment "may not be opened or set aside unless a motion to open or set aside is filed" in accordance with our statutory rules. General Statutes § 52-212a. In *Zilkha*, the court did not have the authority under § 46b-81a to transfer the defendant's *property*—specifically, the funds in the escrow account—to pay the fees because the judgment had already been rendered. *Zilkha* v. *Zilkha*, supra, 159 Conn. App. 169. Section 46b-81 (a) may only be used "[a]t the time of *entering* a decree annulling or dissolving a marriage . . . ." (Emphasis added.) This court was clear in stating that, "although the court was free to order that the defendant pay some or all of the fees . . . it lacked the authority to direct that these payments be made from the escrowed funds." *Zilkha* v. *Zilkha*, supra, 174–75. This is because the escrowed funds were specific property that "belonged solely to

the defendant . . . ." Id., 175. Thus, "until . . . the court opened the judgment . . . [it] was without authority to disburse funds from the escrow account." (Footnote omitted.) Id. For these reasons, *Zilkha* is inapposite to the present case.

Here, the parties each submitted proposed orders prior to the commencement of trial. The defendant proposed that the health savings, brokerage, and draw accounts should be equally divided between the parties, and that the plaintiff should pay 75 percent of the children's uninsured medical expenses going forward. The defendant also asked that the court retain jurisdiction to enter educational support orders for the children's college education. Conversely, the plaintiff's proposed orders requested that he retain the three accounts in question, provided that they be used for the limited purposes of "the children's medical expenses . . . the children's postmajority educational expenses . . . [and] to be used for tax payments in 2022." At trial, the plaintiff testified that the health savings and the brokerage accounts were created with the intention of using the funds for the children's medical expenses and the children's college expenses, respectively, and that the draw account was historically used to pay taxes. During his testimony, he requested that these accounts be designated for use only for those intended and historical purposes, and that they be distinguished as not existing for his personal benefit. The defendant did not raise an objection or express any concern regarding the propriety of the plaintiff's proposed use of those accounts.

The defendant argues that, although § 46b-81 provides a court with the authority to assign assets or the responsibility of debts to a spouse during dissolution, it does not allow "the trial court to order debts, liabilities and expenses [to] be serviced from specified assets." The defendant's only cited authority is *Zilkha* v. *Zilkha,*

supra, 159 Conn. App. 167, which is inapposite to this case. Contrary to the defendant's assertion, we conclude that the court *did* have authority under § 46b-81 (a) because it was dividing the parties' property and rendering the judgment dissolving the marriage. "The purpose of a property assignment is to divide the ownership of the parties' property equitably. . . . [E]quitable remedies are not bound by formula but are molded to the needs of justice. . . . Further, we presume that the trial court properly considered all of the evidence submitted by the parties." (Internal quotation marks omitted.) *Szegda* v. *Szegda*, 97 Conn. App. 426, 436, 904 A.2d 1266, cert. denied, 280 Conn. 932, 909 A.2d 959 (2006). As our Supreme Court repeatedly has stated, "trial courts are empowered to deal broadly with property and its equitable division incident to dissolution proceedings." (Internal quotation marks omitted.) *Bender* v. *Bender*, 258 Conn. 733, 743, 785 A.2d 197 (2001).

On the basis of our plenary review of the record, we conclude that it was legally and logically correct for the court to equitably divide the parties' property and order the accounts at issue to be used for their originally intended and historical purposes. Because § 46b-81 empowered the court to enter these orders, the defendant's argument fails.

II

The defendant's second claim is that the court abused its discretion by failing to assign a value to the PVA account prior to dividing the parties' property. She argues that awarding an asset entirely to one party necessitates using a present value method so that the value of the asset can be properly offset with other marital assets. Because the PVA account was awarded solely to the plaintiff, the defendant claims that the court necessarily used a present value methodology of

valuation, and its failure to assign a value to the account constituted an abuse of discretion. We disagree.

The following additional facts are relevant to this claim. The plaintiff "is a partner and national tax leader in a large public accounting firm." The PVA account is a quasi-pension program available only to the partners of his firm that provides for an allocation of a future payout to those reaching retirement status, if multiple contingent factors are met. At trial, both parties presented expert witnesses to testify regarding the PVA account. The plaintiff's witness testified that, taking into account multiple risk factors, and assuming the plaintiff works until the retirement age of sixty-three years old,[3] the after tax, present value of the PVA account was $520,000. The defendant's witness testified that he was only retained to issue a rebuttal, and that it was his opinion that "it's impossible to value" the PVA account because there "were too many variables" and it was "overly speculative." Each party submitted proposed orders regarding how to divide the marital estate. With respect to the PVA account, the defendant proposed a formula to be used in entering a domestic relations order ultimately allowing 50 percent of the benefit to be paid to her. The plaintiff's proposed orders suggested a 60/40 division of assets in his favor, with the PVA account being retained by him as part of this division. Alternatively, the plaintiff supplied an amended proposed order "[i]n accordance with the court's . . . request . . . which represents an alternative asset division in the event the court elects not to present value the plaintiff's PVA [account] and offset it with other assets," which also proposed that the account be awarded exclusively to him.

During the trial, the plaintiff offered extensive testimony regarding the PVA account. The plaintiff testified

---

[3] During the trial, the plaintiff testified that he was fifty-two years old.

that, contrary to the defendant's proposal, "the firm could not do a domestic relations order" by making payments to her from the PVA account because payments may only be made to those "in the capacity as owners or partners in the firm," and could not be made to the defendant because doing so "would bring along . . . regulatory issues around [Securities and Exchange Commission] independence, around conflicts, around . . . anything and all that we're required to comply with as partners in our firm would then be applied to her." During the plaintiff's testimony regarding the PVA account, the court interjected many times to ask clarifying questions and engaged in a prolonged colloquy with the plaintiff that spanned nine pages of the transcript. At one point, the following exchange took place:

"The Court: But the more important point is . . . there's no account with this money in it. You can't hand it over. It's subject to contingencies. You can't even define exactly what the dollar amount would [be] ultimately . . . [going into] your hands. That's your testimony."

"[The Plaintiff]: Yes, Your Honor."

The court ultimately awarded the PVA account to the plaintiff without fixing it with a monetary value or stating which methodology of valuation it used.

It is well established that "[a]n appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Bender* v. *Bender*, supra, 258 Conn. 739–40.

The parties do not dispute that, when a court uses the present value method, the court is required to "determine the present value of the pension benefits, decide the portion to which the nonemployee spouse is entitled, and award other property to the nonemployee spouse as an offset to the pension benefits to which he or she is otherwise entitled." (Internal quotation marks omitted.) *Kent* v. *DiPaola*, 178 Conn. App. 424, 435, 175 A.3d 601 (2017). The parties additionally agree that "a trial court, in valuing the parties' assets upon dissolution, has considerable discretion in selecting and applying an appropriate valuation method." *Krafick* v. *Krafick*, 234 Conn. 783, 799, 663 A.2d 365 (1995). The contention lies between the defendant's assertion that, because the court awarded the PVA account solely to the plaintiff, it *necessarily* used the present value method, and the plaintiff's argument that the court never indicated it was using the present value method, therefore, as long as the court acted equitably by taking the value of the account into consideration when calculating its financial orders, there is no requirement to assign a numerical value to the account.

"[W]e note that, as a general proposition, the trial court need not necessarily specify a valuation method used." (Internal quotation marks omitted.) *Anderson* v. *Anderson*, 160 Conn. App. 341, 352, 125 A.3d 606 (2015). In *Krafick*, our Supreme Court highlighted "three widely approved methods of valuing and distributing pension benefits"; *Krafick* v. *Krafick*, supra, 234 Conn. 800; but acknowledged that "[t]hese methods are not exclusive. A trial court retains discretion to select any other method to take account of the value of a pension asset 'that might better address the needs and interests of the parties' "; id., 804; so long as the court does not "[remove the] property interest from the scales in determining an equitable division of all of the property before the court." Id., 806. The court does "need to

consider the economic value of the parties' estates. The court need not, however, assign specific values to the parties' assets." *Bornemann* v. *Bornemann*, 245 Conn. 508, 531, 752 A.2d 978 (1998).

Here, the court did not explicitly state which valuation method was used when dividing the parties' assets, nor did it assign a specific value to the PVA account. The defendant asserts that, because the court awarded the account entirely to the plaintiff, it necessarily used a present value method. However, the defendant provides no authority, and we can find none, indicating that awarding an asset entirely to one party is proof that a valuation was conducted using the present value method.

In this case, the record clearly reveals that significant time and effort were spent considering how to value and equitably divide the parties' property given the complexity of the PVA account. As previously stated, in relation to the PVA account, the evidence before the court included testimony from two experts, as well as proposed orders, an amended proposed order at the court's request showing an alternative division of the PVA account, and the court's own detailed examination of the plaintiff during the trial. Unlike in *Krafick* where, "[d]espite . . . repeated attempts, the trial court refused to state the basis of its property distribution or to articulate the value" during a hearing on "a motion to open and clarify the trial court's judgment"; *Krafick* v. *Krafick*, supra, 234 Conn. 790–91; here the defendant did not attempt to clarify any ambiguity in the court's order by filing a motion for articulation in accordance with our rules of practice. See Practice Book § 66-5; see also *Mitchell* v. *Bogonos*, 218 Conn. App. 59, 67, 290 A.3d 825 (2023) ("Until the contrary is shown, the law presumes that judges have acted in accordance with the law. We do not presume error." (Internal quotation marks omitted.)). Further, the defendant's own expert

witness declined to place a value on the account, testifying that it was "impossible" to do as a result of the "overly speculative" and variable nature of the account. "[W]hen a party neglects to provide the court information regarding the value of his or her assets, that person cannot later complain about the court's valuation." *Brooks* v. *Brooks*, 121 Conn. App. 659, 670, 997 A.2d 504 (2010). Neither may a party argue the impossibility of assigning a value to an asset, then later cry foul when the court declines to assign a value to the same asset.

On the basis of our careful review of the record, we may reasonably presume that the parties' property interest in the PVA account was firmly on the scales as the court made its equitable division of the property. Although the court did not state which valuation method it used, it was not required to do so. Because the defendant failed to file a motion for articulation to clarify any potential ambiguity in how the court valued the parties' property, there is no evidence in the record supporting her claim that the court abused its discretion by failing to assign a value to the plaintiff's PVA account.

### III

The defendant's final claim is that the court abused its discretion regarding the alimony order by (1) improperly basing it on the plaintiff's gross income as opposed to net income, and (2) awarding an improper alimony amount because the court improperly factored in the child support orders when calculating alimony, and because the amount ordered, "when viewed through the lens of the [plaintiff's] net annual income . . . as well as the family's station and standard of living," was inadequate. We disagree.

When a party calls into question a court's dissolution orders, the standard of review is an abuse of discretion. We reiterate that, "[i]n determining whether a trial court

has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Olson* v. *Mohammadu*, 310 Conn. 665, 671, 81 A.3d 215 (2013).

A

The parties do not dispute that "[a] trial court must base periodic alimony and child support orders on the available net income of the parties." (Internal quotation marks omitted.) *Ludgin* v. *McGowan*, 64 Conn. App. 355, 358, 780 A.2d 198 (2001). The defendant argues that this case is similar to *Ludgin* because, as in *Ludgin*, the court did not make an explicit finding in its memorandum of decision as to the parties' respective incomes, and because the court only mentions gross income, and not net income, in the memorandum of decision. The defendant thus asserts that it must be inferred that the court abused its discretion by improperly relying on gross income in fashioning the support orders.

Our review of the record reveals that this case is not comparable to *Ludgin.* In *Ludgin*, the plaintiff's income was "difficult to determine because he [was] a sole practitioner and had not yet filed his federal tax return at the time of the hearing." Id., 357. Additionally, "[t]he court's memorandum of decision [was] devoid of any mention of the parties' net incomes," and the court "repeatedly referred to and compared the parties' gross incomes" in its decision. Id., 358–59. Here, the plaintiff is *not* a sole practitioner, and his net income *was* easily ascertainable. The trial court had exhibits in evidence showing the plaintiff's net earnings for each of the four years prior to the dissolution hearing. Further, while the decision in *Ludgin* repeatedly references and compares the gross incomes of the parties, here, the court's memorandum of decision only alludes to the plaintiff's gross

income one time, and that was in the context of stating that the plaintiff is a high income earner and not in the context of entering support orders. This case is further distinguishable from *Ludgin* because here, the court *does* mention net income in its decision when determining the amount of child support. Although it does not repeat the mention of net income when awarding alimony, the court states that it "adopts [the plaintiff's] proposal that he pays [the defendant] $5000 a month in alimony." The plaintiff's proposed alimony order clearly states that it is calculated as a percentage "of his *net* income averaged over the last four years." (Emphasis added.) For these reasons, the defendant's claim that the court based its alimony orders on the plaintiff's gross income without considering his net income fails.

B

The defendant's final argument is that the court erred in the amount of alimony it ordered. The defendant first states that the court erroneously factored in the child support orders when calculating alimony and thus improperly conflated the orders. The defendant also contends that the amount of alimony ordered was insufficient. We disagree.

"In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment." General Statutes

§ 46b-82 (a). "[T]he trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case. . . . There is no additional requirement that the court specifically state how it weighed the statutory criteria or explain in detail the importance assigned to each statutory factor." (Internal quotation marks omitted.) *Ingles* v. *Ingles*, 216 Conn. App. 782, 795, 286 A.3d 908 (2022).

In its memorandum of decision, the court provided insight into its reasoning for awarding alimony. Specifically, the court stated: "There is no question that [the defendant] has given up any career options she may have had to raise a family, and it is desirable that she continue for a time to do so. She has very limited future job prospects, and she has been married to [the plaintiff] for over seventeen years. These factors favor alimony. But considering her repeated misbehavior and lies about it, the court finds the fault factor tips solidly against granting her request for significant percentages of [the plaintiff's] income. . . .

"Instead, mindful that it has granted more child support than he proposed, the court adopts [the plaintiff's] proposal that he pay [the defendant] $5000 a month in alimony. For many years, she will have over $260,000 in annual child support and $60,000 of annual alimony. She will have a house with a reasonable mortgage on it and the benefit of additional property orders [equaling a total of $75,000]. This is a reasonable sum when the court considers all the statutory factors against the facts of the case. . . . [The defendant] will be amply provided for given that her household will be supported for many years by substantial child support and alimony, and she will have all the equity in the marital home—an amount both parties agree is around $560,000."

The defendant argues that the court improperly combined the child support and alimony orders, "assum[ing]

that the child support will be utilized by [the defendant] to cover her personal expenses and support her needs." However, the court's mention of the ample child support when crafting the alimony orders may be reasonably understood as evidence that the court was considering the required factors in § 46b-82 (a), including the "amount and sources of income" and the "needs of each of the parties . . . ." The plaintiff's net income will be significantly reduced by the high amount of child support awarded in this case. Additionally, the marital home and its equity is awarded to the defendant. The court's mentioning of these factors is relevant as they affect its determination of how much to award in alimony, and not necessarily because the court combined the child support and alimony orders. In light of the foregoing, we conclude the defendant's argument that the court conflated the child support and alimony orders is without merit.

We also reject the defendant's argument that the alimony orders were erroneous as to the amount, representing an inadequate amount "when viewed through the lens of [the plaintiff's] net annual income . . . ." The defendant states that the $60,000 per year alimony award would not allow her "to live and have an opportunity to become self-sufficient after years of raising children."

"In determining whether alimony shall be awarded, and the . . . amount of the award, the court shall consider the evidence presented by each party . . . and needs of each of the parties and the award, if any, which the court may make pursuant to [§] 46b-81 . . . ." General Statutes § 46b-82 (a). A court is "free to credit or reject all or part of the testimony given by the [parties]. On review, we do not reexamine the court's credibility assessments." *Zilkha* v. *Zilkha*, 167 Conn. App. 480, 489, 144 A.3d 447 (2016).

Here, the court did not credit the defendant's testimony. In assessing the defendant's credibility, the court stated: "[W]hen it was time to preserve evidence in the wake of the divorce filing, [the defendant] disposed of her mobile phone with whatever pictures and messages might have been on it. She claims she lost it and couldn't recover anything from it. Considering her other lies and the obvious advantage to her of this all too typical loss, the court doesn't believe her. It also doesn't believe her because of her tone and demeanor as a witness. She had canned explanations for her conduct. Her testimony seemed more practiced than sincere, and the court recognized no convincing remorse over her betrayals or her lying. [The plaintiff] made the opposite impression—wounded, candid, and regretful. [The defendant's] perjury, her affairs, and her destruction of evidence have statutory weight under §§ 46b-81 and 46b-82 . . . . They make [her] claims in the lawsuit starkly unappealing." The court also did not credit her testimony regarding her need for a larger alimony award. Specifically, the court stated that the defendant's claim for support "is disproportionate to her needs, it disregards her fault, and it gives no fair recognition to [the plaintiff's] considerable financial achievements." Finally, the court stated that the defendant "will be supported for many years" when taking into account the support orders and that she was awarded the marital home, including its equity of approximately $560,000. In its discretion, the court stated that the alimony orders represented "a reasonable sum when the court considers all the statutory factors against the facts of the case."

The record reveals that the court properly considered the criteria for determining what amount of alimony to award in accordance with § 46b-82 (a). It is within a court's discretion to place "varying degrees of importance on each criterion according to the factual circumstances of each case." (Internal quotation marks omitted.) *Ingles* v. *Ingles*, supra, 216 Conn. App. 795. On

the basis of the facts, evidence, and findings in the record, we cannot agree that the court abused its discretion by ordering an insufficient alimony award.

The judgment is affirmed.

In this opinion the other judges concurred.